FAIN-McGAHA OIL CORPORATION v. MURKO OIL
& ROYALTY COMPANY.

No. 6756.   Decided February 10, 1937.
(101 S. W., 2d Series, 547.)

*W. E. Fitzgerald* and *Leslie Humphrey,* all of Wichita Falls, for plaintiff in error.

Defendants, being engaged in the occupation of producing oil from the lease in question, could not, under a contract of hire with plaintiffs, who produced the oil for defendants, be relieved of coming under the classification of those who should be taxed for the production of oil under Article 7071, R. S. 1925. Producers Oil Co. v. Stephens, 99 S. W., 157; Texas Co. v. Stephens, 100 Texas, 628, 103 S. W., 481; 37 C. J., 200.

*A. H. Carrigan,* of Wichita Falls, for defendant in error.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

On February 18, 1928, Crown Central Petroleum Corporation, owner of a leasehold interest for the exploiting and development for oil and gas in Block 20 of Wilson's Geraldine Subdivision, containing 35 acres of land, more or less, in Archer County, assigned an undivided two-thirds interest therein to Fain-McGaha Oil Corporation.

Provisions material to this litigation are as follows:

"As a further consideration, the buyer agrees that it will:

"(a)—Fully comply with all the terms and conditions contained in said original lease, and promptly drill all offset wells.

"(b)—Commence the actual drilling of a well on the land described in said leasehold interest within _____ days from this date; and shall drill sufficient wells upon said land to fully develop the same for oil and gas;

"(c)—Pay all the expenses necessary in the development and

operation of said lease for the production of oil and gas therefrom.

"Buyer shall. charge seller a flat $1,666.66 for each completed well drilled to the producing horizon, and which said sum is to include cost of all lease equipment necessary for the operation of the lease; and a flat operating charge of 25c per barrel for one-third of the oil produced from said lease.

"The above charge shall constitute all the expenses that the seller shall be liable for; and the buyer shall be entitled to be reimbursed from the proceeds of the seller's one-third (1/3) of the oil.

"It is distinctly understood and agreed that in no event shall there be any liability personally on the part of seller for any expenses of development and operation of said lease; and seller's expense (that is, the two flat charges above mentioned), shall be carried by buyer, and buyer shall reimburse itself therefor wholly out of seller's portion of the oil and gas produced from said lease.

"As long as the seller shall be indebted to the buyer (limited to said flat charges above mentioned) the buyer shall be entitled to receive all the oil from said lease until it shall have been reimbursed for such indebtedness.

"All the production from said lease shall be run to some reputable pipe line company or companies upon proper division orders.

"Not later than the tenth of each month, the buyer shall send to the seller, by registered mail, an itemized statement showing the status of the account between the buyer and the seller, to which shall be attached a copy of the pipe line statement for the previous month."

On June 11, 1928, Crown Central Petroleum Corporation assigned to Murko Oil & Royalty Company its remaining one-third interest in said lease, subject to the terms and conditions of said outstanding assignment to Fain-McGaha Oil Corporation.

The only question now involved in this litigation is the liability of the Murko Company for one-third of what is known as the gross production tax on oil produced from said lease for the years 1928 to 1932. The trial court, jury waived, held the Murko Company liable therefor and rendered judgment accordingly in the sum of $1795.72, being $2178.44 as one-third of said gross production tax for said years, after deducting items aggregating $382.72, which were barred by limitation.

The Court of Civil Appeals was of the opinion that said gross production tax, authorized by the provisions of Art. 7071, Rev. Stat., must be construed as reading "Each person owning * * * in this state any oil well who produces in any manner any oil by taking it from the earth", and all the tax must be paid by the person or persons within that quoted description, also that Fain-McGaha Corporation was the only party within such description and therefore solely liable. The trial court's judgment was accordingly reversed and rendered in favor of the Murko Company. 70 S. W. (2d) 281.

It is the contention of Fain-McGaha Corporation that said production or occupation tax was not included or taken into account in the contract between it and the Crown Central Corporation but the contract had reference to a flat charge to be paid by the Crown Central Corporation for the drilling of wells and producing the oil therefrom; that this was a lease expense and the occupation or gross production tax is not a lease expense in the sense that the parties had in mind when they made the contract.

On the other hand, the Murko Company contends that all the charge to be made against it for operating the lease was the flat charge of 25c per barrel on one-third of the oil produced from the lease, and that this constituted all the expense the seller should be liable for in the operation of said lease.

In the particulars here pertinent, Art. 7071, Rev. Stat. 1925, in force until repealed by the General Revenue Act approved May 22, 1933 (Chap. 162, Reg. Session, 43d Leg.), read as follows:

"Art. 7071.—1. Each person owning, controlling, managing, operating or leasing in this State any oil well, or any person who produces in any other manner any oil by taking it from the earth in this State, shall make quarterly on the first days of January, April, July and October of each year, a report to the Comptroller under oath of such person or if the producer is other than a natural person, under oath of the president, treasurer, superintendent or person in charge of such production, showing the total amount of oil produced by such person from each well, or otherwise, during the quarter next preceding and the average market value thereof during said quarter. Each such person on said first days of January, April, July, and October shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date equal to two per cent of the value of the total amount of

oil produced in this State by such person during the quarter next preceding such first days of January, April, July and October at the average market value thereof.

"2. Each person mentioned and included in subdivision 1 of this article shall make, keep and preserve a full and complete record of all such oil produced in this State during the time so engaged in its production, and said record shall be open at all times to the inspection of all tax officers of this State. Any person failing to comply with this requirement shall be subject to a penalty not less than five hundred and not more than fifteen hundred dollars payable to the State of Texas, and such penalty shall accrue for each ten days of failure to comply with this subdivision of said article and such penalty shall accrue for failure to comply with this subdivision with reference to each separate oil well.

"3. In each report required to be made by this article such person making the same shall show in detail the disposition made of any such oil, if disposed of, and if not, shall show where it is stored. Said report shall show to whom any such oil was sold or delivered, the date of sale and delivery, the amount delivered to each, and shall show the name and location of the person, refinery, pipe line, establishment, plant, factory, railroad, institution or place to which or to whom delivery was made. * * *

"9. For the occupation tax, penalties and interest herein provided for, the State shall have a lien on any leasehold interest, ownership of the oil rights or interest owned by the person owing any tax herein provided for."

The statute comprehensively included every person engaged in producing oil whether as owner, manager, operator or lessee, whether produced in person or through others, under contract or otherwise. This was to secure and better insure payment, for the protection of the State, which of course is not concerned which of these parties pay the tax so long as it is paid.

■ All parties who own interests in producing oil wells are included in the provisions of this statute irrespective of the manner in which they have the oil produced or in which the lease is operated.

It was so held in construing the amendment of 1933 (similar to the statute under consideration here), which makes the producer primarily liable for payment of the tax though it must be borne ratably by all interested parties, including

royalty interests. Group No. 1 Oil Corporation v. Shephard, 89 S. W. (2d) 1021; Trustees of Cook's Estate v. Shephard, 89 S. W. (2d) 1026, affirmed by the Supreme Court of the United States, Nov. 9, 1936; Barwise v. Sheppard, 299 U. S., 33, 81 L. Ed., 17, 57 Supreme Court, 70.

We conclude, therefore, that the Court of Civil Appeals erroneously fixed sole liability upon the Fain-McGaha Corporation by virtue solely of said Art. 7071, not only because it misconstrued the statute, but that question was not assigned as error before it, or complained of on appeal; it is conceded by the Murko Company in its brief (p. 23) in that court, "where two or more persons own an oil lease and one of them operates the same, each party owning an interest in the lease, should bear his pro rata part of the expenses of this occupation tax", in the absence of contract, which applicable to the facts in this case is to place such liability in the proportion of interest, viz:—two-thirds on the Fain-McGaha Corporation and one-third on the Murko Oil and Royalty Company, unless Fain-McGaha Corporation agreed by the terms of its contract with the Crown Central Petroleum Corporation to pay all said occupation tax and thus relieve the Murko Company, assignee of the Crown Central Company, therefrom.

The trial court was of the opinion that as the lease contained no mention of taxes or their payment, it was ambiguous in that respect and evidence should be considered to ascertain the intention of the contracting parties as to whether the agreement of Fain-McGaha Corporation to pay the expenses of operation included such tax,—in other words, whether the parties had in mind the matter of occupation or production tax at the time they made said contract. Accordingly, he heard evidence and found as facts:—that in compliance with the contract, Fain-McGaha Oil Corporation drilled and secured production upon the acreage described therein; that during the time the Crown Central Corporation and the Fain-McGaha Corporation produced oil from said lease, the Fain-McGaha Corporation paid only two-thirds of the production tax to the State and the Crown Central Corporation paid its one-third of said tax, and subsequent to the purchase by the Murko Oil Company of the Crown Central Corporation's interest, it (the Murko Company) paid its portion of said tax to the State for the year 1928, amounting to the sum of $1075.49, which, however, in 1930 it charged back and withheld from the Fain-McGaha Corporation in subsequent settle-

ments with the latter; that it is the general and universal custom throughout this oil territory that the party who has charge of the production pays to the State the entire amount of the production tax and bills all parties interested in the production for their pro rata share or portion of said production tax, and said parties pay to the operator their portion thereof, based upon their portion of the oil produced; that the Fain-McGaha Corporation paid the Murko Company's portion, under protest, and thereafter billed the latter therefor and payment was refused.

■ The trial court concluded that a proper and reasonable construction of the contract between Crown Central Petroleum Corporation, as seller, and Fain-McGaha Oil Corporation, as buyer, is that said parties did not have in mind the question of occupation or production tax at the time they made said contract, and therefore, held that the defendant, assignee of said Crown Central Petroleum Corporation, is not relieved by the terms and conditions of this contract from the payment of its portion or pro rata part of the production tax.

The primary rule in construing a contract is to ascertain and give effect to the intention of the parties (10 Tex. Jur., p. 272), to be ascertained from its plain language when free from ambiguity (Id. p. 279).

Giving the words used in the contract their ordinary and commonly accepted meaning, it cannot be said that the term "operating charge of 25 cents per barrel shall constitute all the expenses", of itself, means and includes a governmental tax. On the contrary, we think the contract is not ambiguous and does not include the production tax in question as an obligation to be totally paid by the Fain-McGaha Corporation.

In Trustees of Cook's Estate v. Shephard, supra, one of the contentions was that the act in question, in so far as it imposes the occupation or excise tax on property royalty owners impairs the obligations of their contract whereby the lessee agrees to deliver to their credit "free of cost" in the pipe line the equal one-eighth part of the oil produced, Mr. Justice Van Devanter said:

"The lease contains no mention of taxes or of their payment. It well may be that when rightly construed, the engagement to deliver, free of cost, refers to expenses incurred in producing the oil and conducting it to the pipe line, and is not intended to include governmental exactions, such as a

tax. This would appear to be an admissible if not a necessary construction of that engagement."

The contract refers to expenses incurred in producing the oil and conveying it to the pipe line and not to the said tax. The trial court should not have heard evidence to ascertain the intention of the parties, but having done so, reached the correct conclusion. Its judgment is therefore affirmed and that of the Court of Civil Appeals is reversed.

Opinion adopted by the Supreme Court February 10, 1937.