## PETTIT v. DANCIGER OIL & REFINING CO.

### No. 13659.

Court of Civil Appeals of Texas. Dallas.

Jan. 18, 1946.

Rehearing Denied Feb. 22, 1946.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

W. C. Hock and H. S. Lattimore, both of Fort Worth, for appellee.

BOND, Chief Justice.

On November 30, 1936, Gibson Oil Corporation, owner of a 50-acre oil and gas mining interest in Upshur County, Texas, assigned the lease to Monte Oil Company, with warranty of title free and clear of all liens and encumbrances except as retained therein. The consideration for the assignment was the sum of $60,000 in cash and the further consideration of $60,000 to be paid from the proceeds of oil, gas and/or casing-head gas produced, saved and marketed from said lease until the $60,000 shall have been paid. Subsequently appellee, Danciger Oil & Refining Company, became owner of said lease burdened with all the obligations and covenants contained in the assignment; and appellant, Charles Pettit, became the owner of the deferred payment with all rights and privileges reserved to Gibson Oil Corporation.

In course of operating the lease, appellee produced, saved and marketed oil from the leasehold, and, during the time here involved, paid to the State of Texas, under the provisions of Art. 7057a, Vernon's Ann.Civ.St., all the gross production tax assessed against the oil runs; and, after deducting each month the proportionate tax due ratably to be borne by appellant's oil interest, remitted the balance to appellant toward the liquidation of his $60,000 deferred payment. Thus, on October 12, 1942, the deferred payments having been reduced to an amount of only $33.76, appellee paid to Pettit (claimed by mistake) the sum of $866.24, conceded to be $832.48 more than the net balance of the $60,000 obligation, after deducting the tax from such oil payments.

The whole question involved in the court below and involved here, is whether appellee, as the "producer" and the "first purchaser", obligated itself, in the terms of the lease assignment, to pay the $60,000 free of all taxes, and particularly the gross production tax assessed against that proportion of the oil runs. It is conceded that the proportionate part of the oil runs to liquidate the $60,000 was subject to the gross production tax under Art. 7057a, Vernon's Ann.Civ.St. and primarily liable to the State of Texas; and that appellee, as the "producer" and "first purchaser" of the oil runs, was required to withhold from any payment the amount of such taxes and remit same to the State Treasurer. The determinative question involved, therefore, rests on the terms of the lease assignment. Pertinent to the question, the assignment provides: "Assignee further covenants that it will not suffer any taxes for years subsequent to 1936, to

become delinquent and in the event of a breach of this covenant, the assignor shall have the privilege of paying the said taxes and it shall be secured by a lien on said lease for repayment of such taxes of it by the assignee."

It is contended by appellant that the above provision imposes upon appellee the obligation to pay the taxes assessable against his proportionate part of the oil runs without deducting such taxes from his deferred payments; that he is entitled to payments until the sum of $60,000 shall have been fully paid, that is, payment without the deduction of his proportion of the gross production tax so as to net him $60,000. There is no question that "the parties could by contract provide that, in arriving at the purchase price which should be paid * * * no deduction on account of the gross production tax should be allowed." Stanolind Oil & Gas Co. v. Terrell, Tex.Civ.App., 183 S.W.2d 743, 744 (writ ref.). Thus it is, if the above provision of the lease assignment obligated appellee to pay the taxes on the interest of appellant in the oil produced, saved and sold from the lease without deduction as to net the $60,000, judgment should have been entered for appellant that appellee take nothing on its claim for reimbursement, and that he have judgment for $224.99 to balance full payment of $60,000; otherwise, the judgment of the trial court in favor of appellee for the overpayment should be affirmed.

■ We think the provision of the assignment in question is merely a reversionary right retained by the assignor to protect the deferred consideration of $60,000 in anticipation for default or misgiving of statutory requirements imposed upon appellee as "producer" and "purchaser" as would or might visit a forfeiture of the lease or penalty upon all parties interested in the oil. The assignor, as well as the assignee, was pecuniarily interested in seeing that the gross production tax was promptly paid, hence a protective right was retained by the grantor.

Art. 7057a, sec. 2(6) provides: "The tax herein levied shall be borne ratably by all interested parties, including royalty interests, and producers and/or purchasers of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due." Sec. 5(1) provides: " * * * Failure to pay said tax on the twenty-fifth day of the month immediately following, shall cause said tax to become delinquent and a penalty of ten (10) per cent of the amount of said tax shall be added, such tax and penalty to bear interest at the rate of six (6) per cent per annum from the date due until the date paid"; and sec. 6(1) provides: "For the tax, penalties and interest herein provided for, the State shall have a prior and preferred lien on every leasehold interest, * * * including oil produced and oil runs owned by the person owing any tax herein, and in addition thereto such lien shall include equipment, tools, tanks, and all other implements used on said lease from which oil is produced. Said lien shall extend to and be enforceable against any property, either real or personal, or both, owned by any person or persons made liable for the tax herein levied * * *."

These articles as well as all other pertinent statutes must be read into contracts, where otherwise silent; and, so considered, the reason for the covenant that assignee "will not suffer any taxes for years subsequent to 1936 to become delinquent, and in the event of a breach of this covenant, the assignor shall have the privilege of paying the said taxes, and it shall be secured to be by a lien on said lease for the repayment" becomes apparent.

■ There can be no doubt that the gross production tax is a "tax", and that it was the duty of appellee to retain the tax from all oil produced, saved and marketed from the lease, and remit, each month, direct to the State Treasurer; likewise, there can be no doubt that, absent any agreement, appellant was liable for the gross production tax on that portion of the oil runs allocated to his interest in the lease. There is no language in the assignment expressly obligating the assignee, or holder of the production interest, to reimburse the holder of the $60,000 oil interest for taxes it advanced on such interest. Hence appellee, having advanced the payment as it was required to do, was entitled to retain for its reimbursement the amount so paid out of the proceeds of the oil.

It will be seen from the above quoted provision of the assignment that the holder of the $60,000 deferred consideration, payable in oil, was extended a right or privilege from imposition of forfeiture, or penalty, for failure of the assignee to pay the taxes; and only in the event the assignee fails to do the duty imposed in that re-

gard was the holder of the deferred payment privileged to exercise the right of payment, and have a lien therefor on the lease.

Illustrative of the evident intent and purpose of the assignor and assignee, the lease assignment provides further contingent protective privileges, viz.: "The assignee covenants that until said deferred payment in the sum of $60,000 shall have been fully paid, it will operate said lease diligently, prudently and in a workmanlike manner and that it will abide by the laws and rules and regulations of all constituted authorities having jurisdiction in the premises. And in the event the assignee ever desires to abandon in whole, or in part, or release the said oil and gas lease back to the landowner because of exhaustion of wells, or for any other reason * * * the assignor shall have the right of entering on the premises and operating said lease as if it were its own property until such time as it have been paid, over and above operating expenses, such balance as then may be owing to it on said $60,000 deferred payment. And in the event the assignor shall avail itself of this privilege it shall have the free use of all equipment, * * * on said lease * * * until said deferred payment is fully paid, * * *."

The above provisions are but contingent privileges extended to the assignor, to operate the lease in the event of failure or default of the assignee and to enable the assignor to protect its interest in the lease; otherwise in no way an obligation for the assignee to pay net $60,000 without deduction for taxes or other expenses. Indeed, had any of the contingencies happened before the payment of the $60,000 obligation, and the assignor, or its assigns, had had to operate the lease to protect the $60,000, then it could have deducted all expenses, which may have included taxes and other expenses; and in such event, and only in such event, could the assignor expect to retain net $60,000. But, none of such contingencies having occurred, and no taxes having been suffered to become delinquent, the privileges extended never became effective; hence were not exercised. Therefore the $60,000 deferred payment was burdened with its proportion of the gross production tax advanced to the State under the provisions of the statute. Such payment was burdened with the tax, even had the $60,000 been paid in full to appellant without such deduction, unless there had been a provision that the assignee assumed the burden, which is not present in the agreement.

The judgment of the court below is affirmed.