**HOLLEY et al. v. HOOPER.**

No. 9649.

Court of Civil Appeals of Texas. Austin.
Oct. 8, 1947.

Rehearing Denied Oct. 22, 1947.

Critz, Kuykendall, Bauknight, Mann & Stevenson, and F. L. Kuykendall, all of Austin, for appellants.

Smith & Pollard, of Austin, for appellee.

HUGHES, Justice.

This suit was brought for specific performance of a contract for the sale by appellee, W. R. Hooper, and the purchase by appellants, C. R. Holley and Paul F. Melton, Sr., of an undivided ¾ interest in the Naylor Hotel located in San Angelo, Texas.

The contract, as executed by appellee, reads:

"June 21, 1946.

"I, W. R. Hooper, being the owner of three-fourths undivided interest of the Naylor Hotel, San Angelo, Texas, do hereby agree to sell my interests in said hotel for three-fourths of the price of $252,500.00 which is the net sale price.

"I agree to take care of my pro rata share of taxes, interest, insurance and other obligations at the time the deal is consummated, excepting the mortgages as held by the Western Reserve Life Insurance Company of Austin, Texas.

"I accept $1,000.00 as down payment on the above deal and agree to give C. R. Holley and Paul F. Melton, Sr., until August 1, 1946, to complete this deal.

"I agree to protect the above mentioned parties from any compensation claims or liabilities of W. R. Smith, other than his one-fourth interest.

"The buyers agree to pay Mr. Gus A. Doering his commission for handling this transaction.

"(Signed)   W. R. Hooper."

Upon the execution of this contract by appellee and its delivery to appellants, the $1,000 payment, recited in the contract, was made.

On June 25, 1946, appellee, acting through his attorney, wrote the following letter, which was actually received by appellant Holley, July 13, 1946:

"We advise you that Mr. W. R. Hooper has discussed with our firm an agreement entered into by Mr. Hooper on June 21, 1946, purporting to obligate Mr. Hooper to sell his interests in the Naylor Hotel of San Angelo, Texas, and we further advise you that after close study of this contract we have advised Mr. Hooper in our opinion the writing is not a valid contract and is unenforceable.

"Mr. Hooper does not wish to recognize the validity of this writing signed by himself, nor does he recognize the validity of this writing signed by himself as being binding upon him to sell his interest in the Naylor Hotel, and having advised Mr. Hooper to that effect, and Mr. Hooper not wishing to further negotiate with you with reference to the purchase of these properties, we have been instructed by Mr. Hooper to return to you the enclosed $1,000 check."

This letter was answered by appellants, through their attorneys, on July 22, 1946, the reply reading:

"We have been handed a letter addressed to Mr. C. R. Holley, written by Smith & Pollard, Attorneys of Austin, Texas, in which letter was enclosed a cashier's check in the sum of $1,000.00, payable to Paul F. Melton, Sr., and endorsed by Mr. Melton to W. R. Hooper. This letter and check was not received by Mr. Holley until Saturday, July 20th. The $1,000.00 cashier's check represents the $1,000.00 down-payment made by Messrs. Holley and Melton on the purchase price for the Naylor Hotel, San Angelo, Texas. According to the contract signed by you, and according to information furnished us, it is our opinion that the contract is fair, valid and enforceable. We do not believe that our courts will permit a contract entered into in good faith to be so lightly disregarded. Therefore, we are returning the cashier's check to you, and this is to inform you that Messrs. C. R. Holley and Paul Melton are ready, able and willing to proceed with the contract according to its terms and provisions.

"We are delivering this letter, in which is enclosed the cashier's check for $1,000.00, to attorneys Smith & Pollard, Littlefield Bldg., Austin, Texas, for the reason that we do not know your exact address in Austin. We hope you will come forward so that the sale can be consummated on or before August 1, 1946."

This suit was filed July 26, 1946. Trial was without a jury. Extensive findings of fact and conclusions of law were made by the trial judge. Upon such findings and conclusions the trial court held that the tender of the purchase price by appellants was insufficient in amount, the amount of such tender being $60,278.35 and the amount found by the court to be required under the terms of the contract being in excess of $189,375. Judgment was accordingly rendered that appellants take nothing by their suit.

The determining question raised by this appeal is with regard to the purchase price; specifically, as to whether the amount of the mortgages against the property in favor of the Western Reserve Life Insurance Company, about $170,000, should be deducted from the stated "net sale price" of $252,-

500, or whether such "net sale price" should be paid by appellants, in proportion to appellee's ¾ interest in the property, in addition to the Western Reserve mortgages, which would remain a charge against the property.

The trial court construed the contract as indicated above and as shown by the following findings of fact and conclusions of law contained in its judgment:

"4. The said written agreement above mentioned is not ambiguous or indefinite, but is specific and definite and subject to specific performance, according to its terms.

\* \* \* \* \* \*

"6. The contract provided that defendant, W. R. Hooper, will sell his ¾ undivided interest in the Naylor Hotel of San Angelo, Texas, and the land upon which it is situated, for the net sale price of $189,375 less ¾ of the amount of taxes, interest, insurance and other like obligations, except the mortgages held by the Western Reserve Life Insurance Company of Austin, Texas.

"7. The sales price being stipulated to be the net price, it is not subject to deduction for the amount of such mortgages, and the evidence by parole tending to show such agreement of the parties varies the written terms of the contract, and cannot be given effect."

■ In our opinion the contract is ambiguous; this means that the language of the contract is doubtful and uncertain or susceptible of more than one meaning. 17 Tex.Jur., p. 864.

The contract was not prepared by an attorney. To say that it is not skillfully drawn, is to use a very mild form of expression.

The trial judge evidently considered the phrase, "$252,500 which is the net sale price," as controlling, with "net" as the key word.

"Net" means free from charges or deductions; obtained after deducting all expenses. Overshiner v. Palmer, Tex.Civ. App., 185 S.W. 387; Turnley v. Micheal, Tex.Civ.App., 15 S.W. 912; Hope v. Shirley, Tex.Civ.App., 211 S.W. 246. These cases all involve brokers' commissions and are of little help.

No Texas case has been cited or found where the word "net" was used under circumstances resembling those here presented.

The Kansas City Court of Appeals, however, in Sandbrook v. W. L. Morrison Inv. Co., 209 Mo.App. 600, 239 S.W. 543, 544, construed a contract which provided, in part:

" 'To W. L. Morrison Inv. Co.: For and in consideration of one dollar ($1.00) the receipt of which is acknowledged I hereby appoint you exclusive agent to make sale of the real property herein described as lots 9 and 10 in block 4 Co'ds Brooklyn Hill Addn. known as 2210 E. 20th st. for the price of $4,000.00 net \* \* \*.

" 'In case above-described property is sold or disposed of within the time specified, I agree to make the purchaser a good and sufficient warranty deed to the same and to furnish a complete abstract of title, if required; \* \* \*.' "

The property was sold for $4,000 and it appearing that there was a mortgage against the property in the sum of $708.50, the owner was paid the $4,000 less this amount. He sued to recover the $708.50 which was deducted, and recovered judgment in the trial court. On appeal the defendant contended that the contract was not ambiguous on its face and that the trial court erred in admitting testimony tending to vary its terms.

The court held:

"We think that the contract of March 27, 1920, is ambiguous upon its face. It is susceptible to either of the constructions placed upon it by the parties. \* \* \*

"In a great many cases, the word 'net' as used in contracts has been declared to be of definite meaning and the contracts wherein the word was used were declared not ambiguous; in other cases, the use of the word 'net' has been held to make the contract ambiguous. However, whether the use of the word 'net' causes ambiguity depends entirely upon the connection in which it is used in the contract. If the contract or surroundings show definitely what the charges and deductions should be in order to arrive at the net sum, then it would appear that there is no ambiguity. However,

where the charges and deductions are not certain, the use of the word 'net' clearly gives rise to ambiguity in the contract. From a reading of this contract no one can tell what charges and deductions were to be made in arriving at the net price of $4,000 when all of the circumstances surrounding the execution of the contract are known; that is, when it is disclosed that there was a mortgage upon the property."

We believe this opinion to be in support of holding in this case.

The contract in the above case did not mention the outstanding mortgage. In this case reference is made to the Western Reserve mortgages in the second paragraph of the contract, wherein appellee agreed "to take care of my pro rata share of taxes, interest, insurance and other obligations at the time the deal is closed, excepting the mortgages held by the Western Reserve Life Insurance Company."

This language certainly means that appellee was to pay or otherwise discharge the items enumerated at the time the sale was closed. Giving the same meaning to the exception, stated in the same sentence, the contract would mean that appellee would not "take care of," that is, he would not pay or otherwise discharge the Western Reserve mortgages at the time the trade was closed. If significance be given to the expression "when the deal is consummated," then when should these mortgages be paid? The contract affords no answer. The more important question, by whom or in what manner should the mortgages be paid, also finds no answer in the contract.

We observe that the amount of these mortgages was not stated in the contract. If appellants were bound to pay these mortgages in addition to the cash stated in the contract, the unpaid balance would have been of prime importance and the exercise of very little prudence would have required this amount to be stated in the contract. If the mortgages were to be deducted from the cash price, their unpaid balance would have far less importance since only the amount of cash required of appellants to close the trade would be of moment.

Interesting and not inconsistent with our conclusion that the contract is ambiguous,

we find: appellants, in the trial court, did not plead ambiguity of the contract, which should be done if relied upon, 10 Tex.Jur., p. 516; appellee excepted to appellants' petition on the ground that the contract was not specific in respect to the consideration, and that the contract price was uncertain; parole evidence to explain the contract was offered and admitted without objection; in this court appellants rely on the ambiguity of the contract, and appellee contends it to be plain, specific and unambiguous.

Thus it is seen that the parties have not been sure as to the best position to take in this matter.

■ The contract does not expressly provide that the Western Reserve mortgages are to be assumed or paid by appellants, in addition to stated cash price, nor does it provide that these mortgages are to be deducted therefrom. Construing the contract as a whole, we are unable to say that the contract, in this respect, is clear or free from doubt. We believe the contract susceptible of more than one meaning.

We, therefore, hold that the trial court was in error in concluding the contract was unambiguous and in refusing to give effect to the parole evidence tending to explain the ambiguity.

In view of another trial we will not discuss the parole evidence offered, except to say that it is sufficient to raise an issue of fact.

■ One other point remains to be considered which relates to interest on the unpaid purchase price. The contract was to be consummated August 1, 1946. Appellee repudiated the contract prior to this date. Appellants seek damages based on rents and revenues of the property. The trial court held appellants would be liable for 6% interest on the unpaid purchase price from August 1, 1946. We approve this holding. We do not consider the facts to show a legal tender of the purchase money, the amount of which is still in doubt, but only that appellants were ready, able and willing to carry out the contract as they interpreted it. If appellants receive the value of the use of the property, they

should be required to pay interest on the unpaid purchase price. Crossland v. Hart, Tex.Civ.App., 234 S.W. 558.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.