**FELBER et al. v. SKLAR OIL CORP.**

No. 6528.

Court of Civil Appeals of Texas.
Texarkana.

Nov. 30, 1950.

Rehearing Denied Jan. 4, 1951.

Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, for appellant.

Angus G. Wynne, Philip Brin, Bedford S. Wynne, Longview, for appellee.

HALL, Chief Justice.

This action was brought by appellee against appellants for a declaratory judgment to determine whether certain oil payments due by it to appellants had been paid. The question sought to be determined by the parties was whether appellants or appellee is liable for the gross production tax levied by the State of Texas on the oil delivered by appellee to various pipelines for credit of appellants under the oil payment assignments from appellee to them. Trial was to the court without a jury and resulted in a judgment for appellee, Sklar Oil Corporation, that is, that the gross production tax upon the oil delivered to the credit of appellants in payment of $475,000 item was a proper charge against appellants. The only point brought forward asserts that the trial court erred "in holding that the oil payment assignments should be construed to mean that appellants were not entitled to receive the net sum called for in their oil payment assignments after deducting from the current proceeds of production the gross production tax withheld by the pipeline companies."

Appellants are the heirs of Simon Goldman, deceased, and as such inherited his one-third interest in the capital stock of the Sklar Oil Corporation and Louisiana Iron & Supply Company. The other two-thirds of the stock in said corporations is owned by Sam Sklar and Sam Dorfman. After considerable negotiations lasting from October 1940 to December 1941, appellants sold their interest in the corporations, or, more properly stated, surrendered their stock to appellee for cancellation. The consideration for the surrendered stock was $255,000 cash, payable in installments and certain oil payment assignments in the sum of $475,000. The cash payments have been concluded. And as stated above, the question before us for determination is which of the parties under the oil payment assignments are liable to the State of Texas for the gross production tax. The oil assignments provide:

"Sklar Oil Corporation, a private corporation (hereinafter referred to as assignor), in consideration of the surrender to it for retirement and cancellation of ―――― shares of its capital stock held by the hereinafter designated assignee, in partial liquidation of the said Sklar Oil Corporation, does hereby grant, sell and assign unto ―――――― of ――――, ―――― (hereinafter referred to as assignee), the estates, titles and interests hereinafter defined and specified.

"The estates, titles and interests assigned and conveyed to the assignee hereunder are the oil and gas leasehold estates in the tracts of land hereinafter described, and the rents, issues and profits thereof, insofar as respects ―/320ths of the full amount of all the oil, gas and casinghead gas produced, saved and sold from the first nine tracts hereinafter described, and ―/160ths of the full amount of all the oil, gas and casinghead gas produced, saved and sold from the tenth tract hereinafter described, *until the assignee shall have received therefrom the sum of $―― net, free of all costs and expense of drilling for and operating for the production of and producing the said oil, gas and casinghead gas; and the fractional interests conveyed and assigned hereby, until the above mentioned sum of $―― has been realized,* shall partake of all the privileges and benefits possessed and held by the served landowners' royalty retained under the terms of the several oil and gas leasehold estates, respectively, covering the following described tracts of land: * * *

"*Assignor covenants that it will deliver to the credit of assignee, free of all costs, in the pipe line, or pipelines to which it may connect its wells, the assignee's share of all of the oil, gas and casinghead gas produced and saved from the tracts of land herein described,* * * *.

"The assignor covenants that it will diligently operate and develop the aforesaid leasehold estates so long as they are capable of producing oil or gas in paying quantities, that it will pay all moneys and perform all

covenants and conditions necessary to preserve the said leasehold estates; that it will at all times promptly pay all indebtedness contracted for labor, materials or supplies used on said leasehold estates, and all expenses of operation, and will defend and save harmless the said assignee and the said oil and gas leasehold estates of and from any and all mechanics', materialmen's or laborers' liens. * * *"

The above is a copy of the oil payment assignments with the fractional interest of oil assigned and the amount of the oil payment omitted.

The corporate minutes made and entered by Sklar Oil Corporation, contemporaneously with the oil payment assignments authorizing the surrendering of the stock for the cash and oil payments noted above recite in part:

"Whereas, subject to the vote of the stockholders each of the owners of such stock formerly held by Simon Goldman severally agree to take, in liquidation and by surrendering his or her stock for cancellation, to receive as his or her full pro rata share of all of the assets of Sklar Oil Corporation, in accordance with the terms of the printed form of conveyance and assignment attached to the minutes of this meeting (copied herein as Plaintiff's Exhibit No. 1) that portion of *$475,000.00 of oil and gas in place, which the number of his or her shares of stock bears to 350, to be delivered to him or her if, as and when produced from said leases, as liquidation for all of his or her interest as stockholders in the corporation,* and such stockholders propose in the aggregate to take one-half of all of the oil and gas produced from what is known as the Boultinghouse Lease in the State of Illinois, and one-fourth of all of the oil and gas from the leases in the State of Texas, described in said printed form attached to the minutes of this meeting, if, as and when produced from said leases, and one-fourth of the fair value of personal property or equipment salvaged upon abandonment of any such leases or any well thereon, until he or she has received the full sum hereinafter specified; * * *

"Therefore, be it resolved that Sklar Oil Corporation be partially liquidated and the parties above named be permitted to surrender for cancellation the stock which they own and receive a part of the assets of said corporation, in total liquidation of any interest which they may have as stockholders in said corporation, to-wit: *the said oil and gas in place,* in the above-stated proportions, by direct assignment from the corporation, until they have received the aggregate amount of $475,000.00 *delivered to them free of cost of producing and bringing to the surface, free into the pipe lines;* * * *

" * * * and that the officers be further directed to execute in the forms attached to these minutes, assignments to the parties for their respective interests in said oil and gas in place in the above-described leases, until they shall have received the said sums above specified, in complete liquidation of their stock of the Sklar Oil Corporation * * *." (All italics ours.)

It will be noted that in the minutes of the corporation the contracts of assignment were authorized by the company and a copy of the assignments was attached to and made a part of the minutes. So, to arrive at a proper construction of the oil payment assignment, we must consider it as a whole and determine the mutual intent of the parties. J. K. Hughes Oil Co. v. Mayflower Inv. Co., Tex.Civ.App., 193 S. W.2d 971; 17 C.J.S., Contracts, § 295, page 689. It is proper and necessary in this connection to take into consideration, not only the oil payment assignment, but also the minutes of the corporation authorizing them. Barber v. Herring, Tex.Com.App., 229 S.W. 472; 17 C.J.S., Contracts, § 298, pages 714, 715; § 299, pages 716, 717.

As we view this case appellants are contending that the use of the word "net" immediately following the amount of oil payments, obligates appellee to pay the amount of $475,000 clear of any and all claims including the gross production tax. This is the only place, in either the oil assignments or the minutes of the corporation, where the word "net" appears. Every

other reference to the oil payment in either of said instruments is that the payment of the $475,000 shall be "free of all costs and expenses of drilling for and operating for the production of and producing the said oil and gas and casinghead gas." The trial court considered the oil payment contracts as ambiguous. We think this is a correct assumption, in view of the use of the word "net." Holley v. Hooper, Tex.Civ.App., 205 S.W.2d 120, writ refused, n. r. e.; Sandbrook v. W. L. Morrison Inv. Co., 209 Mo.App. 600, 239 S.W. 543. From the evidence it appears that there was much bickering back and forth as to the amount to be paid to appellants for their interest in the two corporations, as well as the manner of payment. The parties discussed and agreed on the income tax feature and a sufficient sum was added to the purchase price to cover and include the income tax due by appellants on the transaction. Nothing was said about ad valorem tax due by appellants as assignees under the oil payment contracts, and they admit paying that tax, nor was any mention made of gross production tax or who should pay it. It is clear that the contracts and the minutes provided for two kinds of payment for the surrendered stock, one by cash installment, and the other by certain percentages of the oil from the oil payment assignments. It is also clear that the parties contemplated payment of $255,000 in money and $475,000 in oil. Oil was the medium of payment for the $475,000. This is made certain by the numerous references in the assignments and the minutes of the corporation authorizing their execution, such as "assignor covenants that it will deliver to the credit of assignee, *free of all costs,* in the pipeline or pipelines, to which it may connect its wells, *the assignee's share* of all the oil, gas and casinghead gas produced and saved from the tracts of land herein described." Does the expression "sum of $475,000.00, 'net' free of all costs and expenses of drilling for and operating for the production of and producing the said oil, gas and casinghead gas, and the fractional interest conveyed and assigned hereby until the above mentioned sum of $475,000.00 has been re-alized, \* \* \*" place the burden upon appellee of paying the state gross production tax? We think not. The word "net" as used above in the oil payment assignments is a word of general meaning, and could mean any and all kinds of deductions. Here the word is followed immediately by the specific expression "free of all costs and expenses of drilling for and operating for the production of and producing the said oil, gas, and casinghead gas." Thus the word "net" is modified and controlled by the expression immediately following it and can mean no more than the clause quoted last above. The clause quoted last above specifies what was meant by the word "net."

It is said in Scanlan v. Houston Lighting & Power Co., Tex.Civ.App., 62 S.W.2d 537, 540, writ refused:

"Whatever else may be read into it, it seems to this court apparent that these two phrases must be construed together, and that *the succeeding one is merely a specification of what was meant by the first,* \* \* \*.

"In other words, that it is just an instance of where general expressions in an engagement between parties are restricted by particular descriptions immediately following them."

It has been held many times, and we think it is now the settled law of this state that, the specific clause immediately following the word "net" in the assignments does not relieve the oil payment assignee, such as appellants in this case, of the burden of the gross production tax levied by the state. Fain-McGaha Oil Corp. v. Murko Oil & Royalty Co., 128 Tex. 646, 101 S.W.2d 547; Cities Service Oil Co. v. McCrory, Tex. Civ.App., 191 S.W.2d 791; Pettit v. Danciger Oil & Refining Co., Tex.Civ.App., 193 S. W.2d 282. Appellants cite and rely among others, on the case of Stanolind Oil & Gas Co. v. Terrell, Tex.Civ.App., 183 S.W.2d 743. We have carefully examined that case and have concluded that it is not controlling here. The expression discussed in that case is entirely different from the one here. There the word "net" is followed by an expression that is all inclusive and covers and includes all deductions.

When the whole transaction is examined, that is, the oil payment assignments and the minutes of the Sklar Oil Corporation authorizing their execution, it is evident that the gross production tax was not in contemplation of the parties. As stated above the income tax feature was discussed by the parties and proper allowance was made to appellants by appellee to cover that tax. There is no evidence in the record which shows that the gross production tax on the oil or ad valorem tax on the oil payment assignments were ever discussed. In this condition of the record we think the trial court was correct in holding that the gross production tax due the State of Texas on the oil and gas delivered in the pipelines to appellants' credit is due and payable by the appellants.

The judgment of the trial court is in all things affirmed.