**Robbie Mae ALEXANDER et al.**

v.

**TEXACO, INC.**

**Civ. A. No. 69–H–1091.**

United States District Court,
S. D. Texas,
Houston Division.

May 17, 1972.

Thomas H. Lee, Barrow, Bland & Rehmet, Houston, Tex., for plaintiffs.

Oliver J. Butler, Jr., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

This is a suit for judicial construction and interpretation of a deed dated April 25, 1930, from R. E. Burt and P. S. Griffith, as grantors, to the Texas Company, grantee. Plaintiffs, who own equal interests, are the successors in interest to the grantors; defendant is the original grantee, its corporate name having been changed subsequent to the date of the deed from the Texas Company to Texaco, Inc.

The Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1332. The case was submitted on stipulated facts with oral argument by counsel.

On April 25, 1930, grantors executed a deed to the Texas Company, as grantee, conveying an undivided one-half interest in 727 acres of land, more or less, in Harris County, Texas.

The consideration for the conveyance covered by the deed, as recited in the deed, was the sum of $800,000 payable by the grantee to the grantors as follows: payment of $225,000 in cash upon execution of the deed and deferred consideration in the form of payments of $\frac{1}{32}$ of the value at the wells of all oil and gas produced and saved from the land conveyed in such deed until $575,000, without interest, has been paid.

The deed further provided for payment of the deferred consideration on a monthly basis, provided the standard for determination of the value of oil and gas, expressly excluded from the calculation of payment all oil and gas used for development or operating purposes on the land conveyed in the deed, and expressly negated any obligation on the part of the grantee as to future drilling of wells or as to future production from existing wells. Since execution of the deed in the year 1930, payment of the deferred consideration has been made on a monthly basis, and statements have been furnished on a monthly basis by

defendant to the plaintiffs or their predecessors in interest reflecting the status of the account.

Effective September 1, 1933, over three years subsequent to execution of the deed, an occupation tax on all oil produced in Texas, which tax is commonly referred to as gross production tax, was enacted, Tex.Tax.-Gen.Ann. art. 4.01 et seq. (1969), V.A.T.S. This occupation tax has continued in effect since its enactment in 1933, and during the period since September 1933, the defendant has made payment to the State of Texas of such tax levied on oil produced from the land conveyed by the deed in question.

Commencing in September of 1933 and continuing through November of 1961, charges were made by defendant on a monthly basis against the balance owing on the deferred consideration, such charges being the gross value of 1/32nd of the oil produced from the land, including 1/32nd of the occupation tax levied on such oil. The monthly statements of account furnished by defendant to the plaintiffs or their predecessors in interest during this period reflected that 1/32nd of the occupation tax levied on oil so produced was being charged against and deducted from the deferred consideration. There is no evidence of any objection or complaint by the plaintiffs or their predecessors during the period from September, 1933, through November, 1961, concerning the actions of the defendant in this regard. The total amount of occupation tax which was charged against and deducted from the deferred consideration for this period was $5,065.35.

However, in an unexplained change of procedure, commencing in December of 1961 and continuing through December of 1966, the defendant on a monthly basis charged against and deducted from the balance owing on the deferred consideration *only* the net value of 1/32nd of the oil produced, not including 1/32nd of the tax. The monthly statements of account during this time reflected that the tax was not being charged against the deferred consideration. The total amount of tax actually paid by the defendant on plaintiffs' interest in the oil produced during this period was $14,095.86.

In late 1966, a review of the plaintiffs' account was made by the defendant, at which time defendant discovered that the tax had not been charged against and deducted from the deferred consideration since December of 1961. Commencing in January of 1967, defendant resumed its previously abandoned procedure, charging 1/32nd of the occupation tax against the deferred consideration and reflecting such deduction on the monthly statement of account furnished to plaintiffs. The sum of $14,095.86 was also deducted at this time, such sum being the amount which the defendant omitted to charge against the deferred consideration from 1961 through December of 1966.

Upon being apprised of defendant's action, the plaintiffs objected to and challenged the action taken by defendant in charging fees and future sums against the deferred consideration due. The defendant continued to deduct such charges, and the total amount of occupation tax paid on the oil in question for the period of January 1967 through June 1970 is $5,721.07. Taking into consideration the total amount of occupation tax charged against and deducted from the deferred consideration from 1933 through 1970, defendant completed payment of the $575,000 deferred consideration in June of 1970. Of this sum, $24,882.28 was deducted from payment of the occupation tax. It is this latter sum which is the amount in controversy in this cause.

The sole issue before the Court is whether or not plaintiffs are entitled to receive the $575,000 deferred consideration free of charge or deduction for the amount of occupation tax levied by the State of Texas against the oil and gas production on which payment of such deferred consideration was made. In other words, this Court must decide whether the plaintiffs are entitled to the gross

value of ⅟₃₂nd of the production or the net value after deduction of the amount of occupation tax paid on such production.

 The plaintiffs concede that their interest is primarily liable for payment of the occupation tax. However, it is an agreed principle of law that the parties to the instrument creating the oil payment, here, the deed creating the deferred consideration, can shift the burden of this tax by plainly manifesting an intent to do so. *See, e. g.,* 2 Brown, The Law of Oil & Gas Leases § 17.03(3) (2d ed.). The ultimate question to be decided, therefore, is whether or not the deed creating the oil payment or deferred consideration shifts the burden of the tax from the plaintiffs.

The Court is hindered in its search for the true intentions of the parties in the instant case for several reasons. First, the deed was executed prior to the imposition of the occupation tax in the State of Texas. Second, the procedures of the parties in deducting the occupation tax changed twice during the period in which deferred consideration was paid, thus negating any importance that might otherwise have been attached to such procedures. Accordingly, the Court finds itself relying entirely upon the language of the deed in ascertaining the intention of the parties in the instant suit.

The consideration for the execution of the deed was recited to be "Two Hundred Twenty-Five Thousand ($225,000.-00) Dollars in cash, . . . and the further consideration of Five Hundred Seventy-Five Thousand ($575,000.00) Dollars to be paid only out of one-thirty-second (⅟₃₂nd) of the oil and gas produced from the land hereinafter described, if, as, and when produced, as hereinafter more fully set out." The "hereinafter" clause of the deed provided:

> The Texas Company shall pay R. E. Burt and P. S. Griffith one-thirty-second (⅟₃₂) of the value at the wells of all oil and gas produced and saved by the Texas Company from the above described land, if, as, and when produced, . . . until in this manner, and in this manner only, The Texas Company shall have paid the said R. E. Burt and P. S. Griffith the total sum of Five Hundred Seventy-Five Thousand ($575,000.00) Dollars without interest, being the deferred consideration hereinabove provided for.

Plaintiffs contend that, fairly considered, the language of the deed reflects an obvious intention on the part of the parties to provide for the receipt by plaintiffs of the stated amount of the deferred consideration, provided that the oil should not be depleted prior to full payment. Defendant, however, contends essentially that the $575,000 amount of the deferred consideration is not an amount of money that the parties intended the plaintiffs to receive from ⅟₃₂nd of the oil produced, but rather is the measure of the gross production of that ⅟₃₂nd interest which defines its top limit.

In support of their contention that a specified sum is intended by the deed, the plaintiffs point out that the language "without interest" is but surplusage in the deed unless a specified amount was intended.

There are a number of cases on this point construing similar instruments. However, only one of these cases found language sufficiently indicative of an intention to shift the burden of the occupation tax. In Stanolind Oil & Gas Co. v. Terrell, 183 S.W.2d 743 (Tex.Civ.App.—Galveston, 1944, no writ), the Court upheld a trial court determination that the parties had, by contract, provided that no deduction on account of the gross production tax would be taken from the sum designated as the oil payment. This result was reached despite the fact that (1) the lease had been prepared by the lessor's attorneys and should thus be construed most strongly against lessor; (2) the gross production tax had in fact been continually deducted from the oil payment; and (3) no express reference had been made to the

gross production tax, even though the lease post-dated the enactment of the statute initiating such tax.

However the language of the oil payment provision therein construed is likewise compelling, but conversely to the above cited factors:

> In addition to the royalties hereinabove stipulated, there shall be paid to the lessors from the proceeds of the sale of one-eighth [1/8] of the total oil, . . . when and if produced, saved and sold, the net sum of Sixty Four Thousand Dollars ($64,000.00) *without deduction of any kind or character.* . . . (emphasis added).

183 S.W.2d at 744. The court found an unambiguous meaning of this clause:

> The language is broad enough to exclude deductions of any kind by the owner of the working-interest, which constituted a cost of production. But the intention to exclude deduction of the gross production tax from the net sum of $64,000 is manifested as clearly as if the provisions of Art. 7057a were copied into the provision.

183 S.W.2d at 744.

A case which construes language more closely analogous to the language in the deed before the Court is Cities Service Oil Co. v. McCrory, 191 S.W.2d 791 (Tex.Civ.App.—Ft. Worth 1945, no writ). The oil and gas lease involved therein provided for an oil payment, *"free of cost or expense of development or operation . . ."*, of 1/8 of a 7/8 working interest in oil and/or gas produced "until, from the proceeds from the sale of such oil and/or gas, Lessor shall have received the sum of Twenty-Eight Thousand Dollars ($28,000.00), it being understood that when Lessor shall have received *said sum in the amount above specified*, Lessor's interest reserved herein shall terminate . . . ." (emphasis added). The court declined to treat such language as indicative of an intent to shift the burden of the

gross production tax. Variations of provisions closely akin to those in the *Cities Service* case have been weighed and found lacking in the necessary intent to shift the burden of payment of the tax. *See, e. g.,* McLean v. Stanolind Oil & Gas Co., 238 S.W.2d 268 (Tex.Civ.App. —Galveston 1961, writ ref'd n. r. e.); Felber v. Sklar Oil Corp., 235 S.W.2d 481 (Tex.Civ.App.—Texarkana 1950, writ ref'd); Pettit v. Danciger Oil & Refining Co., 193 S.W.2d 282 (Tex.Civ. App.—Dallas 1946, no writ); Fain-McGaha Oil Corp. v. Murko Oil & Royalty Co., 128 Tex. 646, 101 S.W.2d 547 (Tex.Comm.App.1937). The language contained in the agreement in a number of these cases, particularly the *Fain-McGaha* case, the *Cities Service* case, and the *Felber* case are equally supportive of the construction urged herein by the plaintiffs as is the instant case. It is clear, however, that in each of these cases the Texas courts held such language to be insufficient to shift the burden of payment of the occupation tax.

It is obvious that, in a lease executed some three years prior to the imposition of the occupation tax, the parties neither formulated nor manifested any intent to retain or shift the burden of payment of such tax. But an intent to have the lessee bear all deductions, without specific mention of the tax, would be sufficient.

■ The parties did specifically provide for the allocation of certain known liabilities. It was provided that the 1/32nd interest would be measured by the value of all oil and gas *at the well*, thereby providing that the costs of production would be paid by lessee. It was further provided that the measure of deferred consideration would be without interest. But no provision for or allocation of unforeseeable or contingent deductions from the deferred consideration was made.

The plaintiffs seek to distinguish the adverse Texas cases, asserting that the language construed therein was contained in the "free of cost or expense of

development or operation" clauses. Plaintiffs contend that these cases, properly limited, are correct because an allocation of production costs does not, in and of itself, include an allocation of the occupation tax burden. In the instant case, it is argued, the language "without interest" is critical, evidencing an intention that the oil payment should be measured by a specific amount of money, rather than by the volume or the gross value of production.

This Court does not agree that such a limited reading of the cases cited is proper. In such opinions, as in the instant suit, the leases and agreements were studied in their entirety. Included therein were phrases other than the "production costs" phrase which were relevant to the question of whether a specified sum was intended. It is evident that importance was placed on the language granting to the lessor an interest "free of production costs" because the potential for a favorable interpretation of such clause was greater than for other terms in the lease. *See* Pettit v. Danciger Oil & Refining Co., 193 S.W.2d 282, 283 (Tex.Civ.App.—Dallas 1946, no writ) (the court found "no language" evidencing an intent to shift the tax); Felber v. Sklar Oil Corp., 235 S.W. 2d 481, 482 (Tex.Civ.App.—Texarkana 1950, writ ref'd) (the court construed the term "net" and found it insufficient to show that a specific sum, free of taxes, was intended).

From a detailed review and appraisal of the law and the evidence, this Court must find that the plaintiffs have not met their burden of proving the manifestations of an intent to shift the burden of payment of the occupation tax to the defendant. Accordingly, plaintiffs' claim for recovery must fail. These constitute the Findings of Fact and Conclusions of Law of the Court. Counsel will file within twenty (20) days a proposed judgment consistent herewith, agreed upon as to form. It is so Ordered.