**Robbie Mae ALEXANDER et al., Plaintiffs-Appellants,**

v.

**TEXACO, INC., Defendant-Appellee.**

No. 72-2621.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1973.

---

Thomas H. Lee, Houston, Tex., for plaintiffs-appellants.

Oliver J. Butler, Jr., Houston, Tex., for defendant-appellee.

Before COLEMAN and SIMPSON, Circuit Judges and COMISKEY, District Judge.

SIMPSON, Circuit Judge:

In the appeal in this nonjury Texas diversity case, tried on stipulated facts, we are asked to interpret a deed executed prior to the enactment of a gross production tax on the oil produced from the deeded land and determine upon which party that tax should fall. The district court, 343 F.Supp. 663, found that the deed failed to transfer the burden of the tax from the grantors to the grantee. We affirm.

On April 25, 1930, R. E. Burt and P. S. Griffith, as Grantors, executed a deed to The Texas Company, as Grantee, conveying an undivided one-half interest in 727 acres of land in Harris County, Texas. Consideration for the conveyance was $800,000.00 payable by the Grantee to the Grantors by a cash payment of $225,000.00 upon execution of the deed, and deferred payments of $\frac{1}{32}$ of the value at the wells of all oil and gas produced and saved from the land conveyed in the deed until $575,000.00, without interest, had been paid. If $\frac{1}{32}$ of the value of the oil and gas produced from the land was insufficient to pay the $575,000.00, The Texas Company was under no obligation or liability to pay the amount over and above the amount which $\frac{1}{32}$ of the value of the oil and gas would pay. The deed further provided for the deferred payments to be made on a monthly basis, for the standard by which to determine the value of the oil and gas, for the exclusion from

the calculation of payments all oil and gas from the land conveyed which was used for development or operating purposes on that land, and for the express absence of any obligation on the part of the Grantee as to future drilling of wells or as to future production from existing wells.

Robbie Mae Alexander, Jos. H. Burt, Arch B. Marshall and James P. S. Griffith, plaintiffs herein, are all residents of Texas and the successors in interest to the Grantors under the deed. Defendant Texaco, Inc., a Delaware corporation (Texaco) having its principal office and place of business in New York, is the Grantee named in the deed, its corporate name having been changed from "The Texas Company" to "Texaco, Inc."

Since the execution of the deed in 1930, the deferred consideration provided for has been paid on a monthly basis and a statement reflecting the status of the account has been furnished every month by Texaco to plaintiffs or their predecessors in interest.

Effective September 1, 1933, the State of Texas enacted an Occupation Tax, commonly referred to as a gross production tax, on oil produced in the state. V.A.T.S. Tax.-Gen. art. 4.01 et seq. Since that date, this tax has been in continuous effect. It places primary liability on the producer, V.A.T.S. Tax.-Gen. art. 4.03(1) & (7), defined as including any person owning any interest in any oil or its value whether produced by him or by some other person on his behalf, V.A.T.S. Tax.-Gen. art. 4.01(1). The statute further provides for the purchaser of the oil to collect the tax by deducting and withholding the amount of the tax from any payments made by the purchaser to the producer and requires the producer to remit the tax so withheld to the State. V.A.T.S. Tax.-Gen. art. 4.03(1), (4) & (8).

Since 1933, Texaco has made payment of the Occupation Tax levied on oil produced from the land conveyed in the deed. However, every month from September 1933, through November 1951, it charged against and deducted from the balance owing on the deferred consideration the Occupation Tax due on the proportionate amount of the tax applicable to the production on which such deferred consideration has been based, i. e., on $\frac{1}{32}$ of the oil produced from the land. Plaintiffs or their predecessors in interest appear not to have objected to this procedure, which amounted to a charge of $5,065.35. From December 1951, through December 1966, Texaco charged against and deducted from the balance owing on the deferred consideration only the net value of $\frac{1}{32}$ of the oil produced from the land, that is, it did not include the Occupation Tax levied on such oil in the deferred consideration. This amounted to $14,095.86, which, after reviewing plaintiffs' account in 1966, Texaco did later charge against and deduct from the deferred consideration. It was upon being thus notified of Texaco's action of charging against and deducting from the deferred consideration this sum of $14,095.86 that appellants first objected to any charging against and deducting from the deferred consideration of any amount of the Occupation Tax on oil produced from the land since the date of enactment of the tax. In January 1967, Texaco resumed charging against and deducting from the deferred consideration that $\frac{1}{32}$ of the Occupation Tax on oil produced from the land. This continued through June 1970, when, including the total amount of Occupation Tax which Texaco charged against and deducted from the deferred consideration from September 1933, the $575,000.00 deferred consideration payment provided for in the deed was completed. The amount deducted and withheld from January 1967 through June 1970 was $5,721.07. Thus, the total amount of Occupation Tax which Texaco charged against and deducted from the deferred consideration during the period from September 1933, through June 1970, was $24,822.28. Plaintiffs sued below for recovery of this amount and were denied recovery.

The question whether the ultimate burden of this tax is to be borne by the grantors or by the grantee rests upon a determination whether the $575,000.00 limit of the production payment is, under the terms of the deed, a measure of the gross production of this ⅟₃₂ interest or is a measure of money to be actually paid and received; that is, as the district court stated the issue, whether the grantors are entitled to the gross value of the ⅟₃₂ of the production or the net value after deduction of the amount of Occupation Tax paid on such production. Depending upon the resolution of this question is the practical effect of whether the production payment terminated in June 1970, or was to continue in existence until plaintiffs receive the final $24,822.28.

■ Both sides agree that plaintiffs' interest in the oil production here is such that imposes upon them as producers the burden of paying the Occupation Tax allocable to such interest, and that such burden may be shifted to the lessee if the intention to do so is clearly manifested. McLean v. Stanolind Oil & Gas Co., Tex.Civ.App.1951, 238 S.W.2d 268; Felber v. Sklar Oil Corp., Tex.Civ.App. 1950, 235 S.W.2d 481; Cities Service Oil Co. v. McCrory, Tex.Civ.App.1945, 191 S.W.2d 791; Stanolind Oil & Gas Co. v. Terrell, Tex.Civ.App.1944, 183 S.W.2d 743; Fain-McGaha Oil Corp. v. Murko Oil & Royalty Co., 1937, 128 Tex. 646, 101 S.W.2d 547.

Plaintiffs argue that when the entire deed is considered and so construed as to give effect to all its terms, it must be concluded that the parties thereto had intended for them to actually receive the full $575,000.00, or the net value after deduction of the amount of Occupation Tax paid on ⅟₃₂ of the production. In other words, they contend that the deed shifted their burden to pay the tax onto Texaco because certain portions of the instrument would be rendered meaningless if their interpretation of it is not accepted. In particular, the deed called for payment of "$575,000.00 without interest, being the deferred consideration" and that

[I]f one thirty-second (⅟₃₂) of the value of the oil and gas produced by The Texaco Company from said lands is not sufficient to pay said Five Hundred Seventy-five Thousand ($575,000.00) Dollars, then The Texas Company shall be under no obligation or liability to pay the amount over and above the amount which one thirty-second (⅟₃₂) of the value of the oil and gas will pay; it being fully understood that the obligation to pay the Five Hundred Seventy-five Thousand ($575,000.00) Dollars is an obligation to pay the same only out of one thirty-second (⅟₃₂) of the value of the oil and gas produced and not otherwise.

This language, plaintiffs contend, can have meaning only if the $575,000.00 refers to an amount of money intended to be received, and the imposition of a tax subsequent to the deed should not frustrate this intention merely because its burden was not shifted by more specific language.

■■ The district court was not persuaded by the plaintiffs' argument that the deed here did in fact manifest the requisite intent to shift the burden of the tax upon Texaco. Neither are we. First, of the numerous Texas cases which have construed similar instruments, in only one instance was the language of the instrument held by a Texas court to have transferred the payment of the tax. In that case, Stanolind Oil & Gas Co. v. Terrell, supra, the tax was in effect at the time of the making of the lease agreement, thus making it a part of the contract, and the language of the instrument clearly stated that the lessors were to receive from the proceeds of the sale of the oil, ". . . when and if produced, saved and sold, the net sum of Sixty-Four Thousand Dollars ($64,000.00) *without deduction of any kind or character;* . . . ." (Emphasis added.) 183 S.W.2d at 744. With the $64,000.00 figure defined as a "net"

amount "without deduction of any kind or character," we think it would indeed be surprising to find any other interpretation but that the tax which was in existence and therefore presumably considered by the parties would not be deducted from that amount. In all the other Texas cases cited to us, where the language of the instrument was neither as patently unambiguous nor as sweeping as in *Terrell*, the required manifestation of intent to shift the burden of paying the Occupation Tax has been found wanting.

For instance, in Cities Service Oil Co. v. McCrory, supra, the lease agreement provided for the oil payment to be made ". . . free of cost or expense of development or operation of the leased premises . . . until from the proceeds from the sale of such oil and/or gas, Lessor shall have received the sum of Twenty-Eight Thousand Dollars ($28,000.00), it being understood that when Lessor shall have received said sum in the amount above specified, Lessor's interest reserved herein shall terminate . . . ." The court there held that this language did not shift the burden of the Occupation Tax. In Felber v. Sklar Oil Corp., supra, where the oil payment provision of the agreement specified that the amount of its payment would be ". . . net, free of all costs and expenses of drilling for and operating for the production of and producing the said oil . . . until the above mentioned sum . . . has been realized . . . ," the court held the burden did not shift. Similarly, in Fain-McGaha Oil Corp. v. Murko Oil & Royalty Co., supra, involving a lease agreement executed prior to enactment of the Occupation Tax which specified that the lessee would ". . . pay all the expenses necessary in the development and operation of said lease for the production of oil and gas therefrom . . ." and that the lessee's

flat $0.25 per barrel operating charge would be ". . . all the expenses that the seller shall be liable for . . .," it was still held that the production tax was the lessor's obligation.

Second, no effort was made by the conveyance here to provide for unforeseen deductions from the deferred consideration although the parties did make provisions for certain known liabilities. For example, the oil and gas would be valued at the well, thereby requiring that the costs of production be paid by the lessee. A fair interpretation is that unexpected risks were intended by the parties to lie where they might be subsequently imposed.

Finally, Texaco without objection charged against and deducted from the balance owing on the deferred consideration the Occupation Tax due on the applicable production beginning immediately after the tax went into effect and continuing for nearly twenty years. The grantors did not object to such practice during that time. This apparent acquiescence, and the absence of a showing of any attempt to protest or reform the contract at the time the tax was first imposed, is persuasive in our attempt to arrive at the intent of the parties to the original agreement.

■ We deem ourselves bound, as did the district court, by the rather strict standards the Texas courts have imposed on efforts to shift the burden of paying the Occupation Tax. Mindful of the significant indicia present or absent in the case at bar, we are not convinced that the 1930 deed from Burt and Griffith manifested the clear intent required to burden Texaco with payment of the Occupation Tax for the oil produced from the lands conveyed.

Affirmed.