**CLAUDE REGIS VARGO ENTERPRISES, INC., et al., Appellants,**

**v.**

**Albert L. BACARISSE, Trustee, et al., Appellees.**

**No. 1945.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 28, 1979.

Rehearing Denied March 21, 1979.

Stephen J. Cavanaugh, Cavanaugh & Gilmore, Houston, for appellants.

Jimmy Williamson, Jesse Pierce, Foreman, Dyess, Prewett, Rosenberg & Henderson, Houston, for appellees.

COULSON, Justice.

This is an appeal from a summary judgment granted in favor of appellees in a suit based on an alleged wrongful foreclosure under a deed of trust. We affirm the judgment of the trial court.

Appellants defaulted in early 1976 on a promissory note payable to defendant Bank of Harris County National Association, secured by the property in question under a deed of trust naming appellee Bacarisse trustee and appellee Bank of Harris County National Association as beneficiary. Appellants notified Bacarisse in January of 1976 that the business located on the property was being shut down and Bacarisse, as trustee, agreed to take possession of the property which appellants abandoned. In March of 1976 appellants ceased making payments on the promissory note. Thereafter, on May 4, 1976, a foreclosure sale was had which was apparently invalid under Tex. Rev.Civ.Stat.Ann. art. 3810 (Supp.1978) because proper notice was not given to all interested parties as required under that statute. In June of 1976 appellants filed their original petition to set aside the trustee's deed because the sale was invalid. After suit was filed another foreclosure sale was held on August 3, 1976. It is not disputed that the second foreclosure sale complied with all the requirements of Tex. Rev.Civ.Stat.Ann. art. 3810 (Supp.1978), and the terms of the deed of trust. The property was sold to the Bank of Harris County National Association, which subsequently sold the property to appellee Joe D. Havens, Inc. The August 3 public sale was held in the late afternoon to accommodate appellant's counsel. At 2:20 P.M. on August 3 a Creditors' Involuntary Petition In Bankruptcy for appellant was filed in the United States District Court for the Southern District of Texas, Houston Division. It is not disputed that the petition for bankruptcy was filed prior in time to the consummation of the foreclosure sale. On Oc-

tober 19, 1976, the cause upon the petition for involuntary bankruptcy was heard by the United States District Court for the Southern District of Texas, Houston Division. That court's order was entered on November 12, 1976, and states that the defendant in that cause (appellant here) appeared through its attorney and the attorney for the petitioners appeared, but that the petitioners failed to appear. It further recites:

No evidence, as required by the Bankruptcy Act, was presented to support or prove the allegations set forth in the involuntary petition in bankruptcy filed herein.

Upon consideration of the absence of evidence to support an adjudication that CLAUDE REGIS VARGO ENTERPRISES, INC. be declared bankrupt and of the violation of the petitioning creditors of orders of this Court, it is the determination of this Court that the petition be dismissed.

In addition to dismissing the petition for bankruptcy the court ordered that "ALL STAYS ARE ANNULLED".

On November 18, 1976, appellants filed their "Second Amended Supplemental Petition to set aside two Trustees Deeds" which repeated the allegations as to the May 4 sale and also asserted that the August 3 sale was invalid because it occurred after the filing of the petition for bankruptcy. Appellees filed answers and appellee Bank filed a counterclaim against appellants for the deficiency still due and owing on the note after the second foreclosure sale. Appellants filed a motion for summary judgment which was denied. Appellees subsequently filed a motion for summary judgment which was granted. The trial court severed the defendant bank's counterclaim for the deficiency from the remainder of the suit and plaintiff brought this appeal from the granting of defendant's motion for summary judgment.

The primary question for decision in this appeal is whether the filing of the petition for bankruptcy prior to the completion of the August 3 foreclosure sale rendered that

sale totally invalid and of no effect. Appellants rely on Rule 601, Rules Bankr.Proc., 11 U.S.C.A. which is titled "Petition as Automatic Stay Against Lien Enforcement" and states, in subsection (a):

The filing of a petition shall operate as a stay of any act or the commencement or continuation of any court proceeding to enforce (1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings.

Under this subsection an automatic stay of the foreclosure sale in question arose upon the filing of the bankruptcy petition at 2:20 P.M. on August 3, 1976. Thus the sale was invalid when it was completed later on the afternoon of that day.

Appellees' position is that the order of the Bankruptcy Court annulling all stays serves to validate actions, including this foreclosure sale, taken between the filing of the petition for bankruptcy and the dismissal of that petition. We agree. Federal Bankruptcy Rule 601 itself contains provisions relating to relief from stays of proceedings which arise upon the filing of a petition in bankruptcy. Those portions relevant to our decision read as follows:

(b) Duration of Stay. Except as it may be *terminated, annulled, or modified by the bankruptcy court* under subdivision (c), (d), or (e) of this rule, the stay shall continue until the bankruptcy case is dismissed or closed, . . .

(c) Relief from Stay. . . . *The court may,* for cause shown, *terminate, annul, modify, or condition such stay.*

(emphasis added) Rules Bankr.Proc., Rule 601, 11 U.S.C.A. We note that the rule itself expressly provides for *annulment* of the stay as well as for its termination, modification, or conditioning. We have been unable to discover any case authority interpreting the word "annulled" as used in Rule 601, but the Advisory Committee's notes to the rule provides some guidance:

Whether the enforcement of a lien against property in the bankruptcy court's custody by an act or proceeding after bankruptcy without permission of the bankruptcy court is void has been the subject of conflicting views by the courts and commentators. See 1 Collier ¶ 2.62[1] & [2] (1968). *This rule consists with the view that such an act or proceeding is void, but subdivision (c) recognizes that in appropriate cases the court may annul the stay so as to validate action taken during the pendency of the stay.*

(emphasis added), Rules Bankr.Proc., Rule 601, 11 U.S.C.A., Advisory Committee's note. This interpretation is in line with the usual meaning given to the word "annulled", which is "to abolish or invalidate". *Musician Protective Ass'n, etc. v. Semon,* 254 S.W.2d 211, 213 (Tex.Civ.App.-El Paso 1952, writ ref'd); "1a. to cause to cease to exist: reduce to nothing: blot out . . . 2b. to make legally void:" Webster's 3rd New International Dictionary (1967). We hold that the action of the bankruptcy court in annulling this stay served to invalidate the stay *ab initio,* thus validating the sale conducted after the automatic stay arose upon the filing of the bankruptcy petition.

Appellants urge that considerations of due process and public policy should prompt this court to hold that the foreclosure sale was void because of the stay and was not validated by the subsequent annulment of that stay. Appellants' due process rights were not violated. It is undisputed that proper and timely notice of the sale under Tex.Rev.Civ.Stat.Ann. art. 3810 (Supp.1978) was given. Appellants argue that the annulment of the stay should not validate the sale, but should merely return the parties to their respective positions at the time immediately prior to the foreclosure. According to appellants this would require reinstitution of the foreclosure proceedings under article 3810 with notice again to be given to all interested parties at least twenty-one days prior to a new foreclosure sale.

Were we to follow appellants' reasoning, a foreclosure sale of a debtor's property could be postponed indefinitely due to the

fact that the mere filing of a petition in bankruptcy operates as a stay upon such proceedings, coupled with the requirement that notice of such sale must be given to the debtor in advance of the sale. While we have no reason to impugn appellants' motives in this case, a debtor who wished to indefinitely forestall the sale of property upon which he had defaulted could persuade his other creditors to file a petition for bankruptcy on the day of the scheduled foreclosure sale, thus automatically invoking a stay and making a subsequent sale void. Under appellants' theory the bankruptcy court's subsequent order dismissing the petition for bankruptcy and annulling all stays would not serve to validate the sale, but would only allow the creditor to start over with the same advance notice requirement for a later sale. If the debtor again filed a petition for bankruptcy on the day scheduled for the second sale the entire scenario would have to be repeated. This process could be repeated *ad infinitum*, effectively blocking an effective foreclosure sale by a secured creditor. If such a process were available to unscrupulous debtors, lenders would become more reluctant to lend money on the basis of a security interest in real property. The public interest would in no way be served by such a result.

We would add that in a proper case, where the petition for bankruptcy is properly pursued by those instituting such petition, the debtor's rights would be protected, for the automatic stay would not be annulled and therefore a subsequent foreclosure sale would not be validated. In the case before us, however, where the bankruptcy petitioners did not present any evidence or, apparently make any efforts beyond actually filing the petition to prosecute their claims in the bankruptcy court, it seems entirely proper and understandable that the bankruptcy court judge would choose to "annul", rather than to retain, terminate or otherwise deal with the stay, thus validating the sale.

As we hold that the August 3, sale was validated by the annulment of the stay, appellants had no cause of action against appellees to set aside the trustee's deed of August 3, 1976, nor any cause of action for trespass against those in possession of the property since that date, nor any basis for obtaining an injunction removing such persons from the property, nor to forestall any further actions relating to the property by appellees. There being no genuine issue of material fact as to the essential elements of appellants' cause of action, and the question of law being decided in favor of appellees, summary judgment was entirely proper in favor of appellees. *Farley v. Prudential Insurance Co.,* 480 S.W.2d 176, 178 (Tex. Sup.1972).

Appellants' second point of error asserts that the trial court erred in granting summary judgment on the whole case because there are genuine issues of material fact involved. Appellants' argument under this point consists of two sentences: "The point has been stipulated to as previously stated. No argument is therefore necessary." We have reviewed the record before us and find no stipulation of any kind included therein. Appellants' second point of error is without merit.

Appellants have filed a supplemental brief containing one additional point of error attacking the trial court's action "in striking and severing plaintiffs' cause of action filed in their Supplemental Petition". Appellants attempted to file a pleading designated "Plaintiffs' Second Supplemental Petition," on February 15, 1978. Although titled a supplemental petition, the pleading attempts to plead new matters constituting additional claims to those pled in the prior pleadings. Thus it is clearly an amendment, rather than a supplemental petition, under Rule 62, Tex.R.Civ.P. This attempted filing occurred some three weeks after the entry of the trial court's order granting summary judgment in favor of appellees on January 26, 1978. Rule 63, Tex.R.Civ.P., governs the time when amendments to the pleadings may be made:

> Parties may amend their pleadings . . provided that any amendment offered for filing within seven days of the date of trial or thereafter . . . *shall be*

*filed only after leave of the judge is obtained . . .* (emphasis added).

 A summary judgment proceeding is a trial with respect to the filing of amended pleadings under Rule 63. *Mainland Sav. Ass'n v. Wilson,* 545 S.W.2d 491, 493 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ); *Bruce v. McAdoo,* 531 S.W.2d 354 (Tex.Civ.App.-El Paso 1975, no writ). Nothing in the record before this court shows that appellants ever filed a motion for leave to amend their pleadings or otherwise brought this matter to the attention of the trial court. The point does not present error. *Houston v. Moore Investment Co.,* 559 S.W.2d 850, 853 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ).

The trial court's judgment is affirmed.