**EXXON CORPORATION,**
Plaintiff-Appellant,

v.

**CITY OF LONG BEACH, a Municipal Corporation, Defendant-Appellee.**

**SHELL OIL COMPANY,**
Plaintiff-Appellant,

v.

**CITY OF LONG BEACH, a Municipal Corporation; Gray Davis \*; Leo McCarthy; Jesse R. Huff \*\*; James Hankla,\*\*\* Defendants-Appellees.**

---

\* Substituted for Kenneth Cory, pursuant to Fed. R.App.P. 43(c)(1).

\*\* Substituted for Michael Franchetti, pursuant to Fed.R.App.P. 43(c)(1).

\*\*\* Substituted for John Dever, pursuant to Fed. R.App.P. 43(c)(1).

TEXACO, INC., Plaintiff-Appellant,

v.

**CITY OF LONG BEACH,**
Defendant-Appellee.

**MOBIL OIL CORPORATION,**
Plaintiff-Appellant,

v.

**CITY OF LONG BEACH,**
Defendant-Appellee.

Nos. 86–5702, 86–5706, 86–5707, 86–5708.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1987.

Decided March 19, 1987.

Andrew J. Kilcarr and John P. Dean, Washington, D.C., Vincent Tricarico, Los Angeles, Cal., Charles F. Rice, New York City; Philip K. Verleger and David A. Destino, Los Angeles, Cal., Kenneth Fountain, Houston, Tex., Raymond V. McCord, Houston, Tex., John S. Kingdon and Alan M. Grimaldi, Washington, D.C., Leslie C. Randall, Universal City, Cal., and Robert D. Wilson, White Plains, N.Y., for plaintiff-appellant.

Alan V. Hager, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellees.

Before KENNEDY and POOLE, Circuit Judges, and PRICE,**** District Judge.

**** Honorable Edward Dean Price, United States District Judge, Eastern District of California, sitting by designation.

KENNEDY, Circuit Judge:

The question in this case is whether the Crude Oil Windfall Profit Tax of 1980, 26 U.S.C. §§ 4986–98 (1982) (WPT), is an excise tax for purposes of a contract between the city of Long Beach and a consortium of oil companies. We conclude that it is not, and affirm the judgment of the district court.

The contract in question is an agreement between the city of Long Beach and a consortium of oil companies including Texaco, Exxon[1], Union Oil of California, Mobil, and Shell (the THUMS companies). Under the agreement, the THUMS companies, as field contractor, have the right to produce crude oil from lands held in trust by Long Beach and the right to purchase a substantial amount of the oil so produced. In return, they pay the city a significant percentage of their net profits under the contract. Other companies, known as nonoperating contractors, are also parties to the contract. They receive shares of the oil produced by the THUMS companies, and pay the city a percentage of their net profits.

The share of production each contractor receives is known as the contractor's percentage. The contractors' percentages and the percentages of net profits paid to the city are as follows:

| Field Contractor | Share of Production | Share of Profits Paid |
|---|---|---|
| THUMS Companies | 80.0% | 95.56 % |
| Nonoperating Contractors | | |
| Pauley Petroleum | 10.0% | 98.277% |
| Chevron U.S.A. | 5.0% | 100.00 % |
| Petro-Lewis | 2.5% | 99.54 % |
| Petro-Lewis | 1.5% | 99.54 % |
| Petro-Lewis [2] | 1.0% | 99.55 % |

Article 4 of the contract establishes net profits accounts. Article 18 permits the contractors to charge certain tax payments to those accounts, reducing the amounts owed to the city. The relevant portions of article 18 provide:

All sales, use and excise taxes ... shall be paid by the Contractors in proportion to their respective Contractor's Percentages, and when so paid such proportion shall be charged to each Contractor's Net Profits Account.

\* \* \* \* \* \*

Nothing herein contained shall be deemed to provide for the charging to any Contractor's Net Profits Account of any franchise, income, profits, capital stock, and other like general taxes or assessments which such Contractor may be required or compelled to pay upon any profits or consideration hereunder.

The dispute arose over characterization of the WPT. The contractors claimed the WPT was an excise tax, chargeable to net profits accounts; the city claimed it was a profits tax and therefore not chargeable. Negotiations failed to resolve the dispute, and the THUMS companies filed declaratory judgment actions in the district court. The district court dismissed the cases on jurisdictional grounds, but we reversed and remanded for a ruling on the merits.[3] *Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534 (9th Cir.1985). On remand the district court determined that the WPT was not an excise tax for purposes of the contract. The THUMS companies now appeal.

**1.** Replacing Humble Oil.

**2.** The contract provides for five nonoperating contractors' shares. Petro-Lewis presently holds three of those shares.

**3.** We reversed and remanded as to Texaco, Exxon, Mobil, and Shell. As to Shell California Petroleum, Inc., which succeeded to Shell's interest in the agreement in 1982, and Union Oil, we held that jurisdiction was lacking. Both companies, however, have agreed to be bound by our decision in this case.

The statute creating the WPT describes the tax imposed as an excise tax. 26 U.S.C. § 4986(a) (1982). At points, the legislative history contains similar language. H.R.Rep. No. 304, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S.Code Cong. & Ad. News 410, 587, 589. There is, therefore, some persuasiveness to the contractors' argument that further inquiry into the nature of the tax is unnecessary. Controlling law, however, forecloses this approach.

The nature of a tax is determined by its operation, not by the labels applied to it. *Educational Films Corp. v. Ward,* 282 U.S. 379, 387, 51 S.Ct. 170, 171, 75 L.Ed. 400 (1931). Moreover, the law of this circuit indicates that the tax in question operates as a tax on incremental revenue, not as an excise tax. We so held in *Tenneco West, Inc. v. Marathon Oil Co.,* 756 F.2d 769, 772–73 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 134, 88 L.Ed.2d 111 (1985), and we are not free to depart from that holding here. In *Tenneco* we concluded that the WPT was a tax on the difference between the price of crude oil before decontrol and the price after decontrol, *see* 26 U.S.C. §§ 4988(a)(1), 4989(a), 4996(c) (1982), and that the labels "excise" or "severance" were not controlling. Those conclusions are fully applicable here.

The contractors seek to distinguish *Tenneco* by noting that it dealt with contractual language different from the language in the case before us, but their argument misses the mark. The importance of *Tenneco* is not its construction of language in a particular contract, but its treatment of the WPT as a tax on incremental revenue and its rejection of the labels "excise" or "severance."

The contractors would not be able to charge WPT payments to their net profits accounts even if *Tenneco* were so easily distinguished, for they have not paid the WPT "in proportion to" their contractors' percentages, as article 18 requires. To pay the WPT in proportion to their contractors' percentages, they would be required to distribute the tax burden as follows: the THUMS companies, which receive eighty percent of the oil, would pay eighty percent of the tax; Pauley, which receives ten percent of the oil, would pay ten percent of the tax; Chevron and Petro-Lewis, each of which receives five percent of the oil, would pay five percent of the tax apiece. As the contractors concede, they have not paid the WPT in this fashion. Nor would it be sensible for them to do so, for paying the tax in proportion to contractors' percentages would ignore differences among the contractors, such as size of net income, that have important consequences under the WPT. *See* 26 U.S.C. § 4988(b)(1) (1982). They have paid the tax *on* the percentage of oil received, but that is of little moment in light of article 18, which requires payment "in proportion to" percentage received.

In sum, our decision in *Tenneco,* as well as the contractors' treatment of the tax, indicate that the WPT is not an excise tax that may be charged against net profits accounts. The judgment of the district court is therefore AFFIRMED.