**SANTA FE ENERGY COMPANY, and Kirby Forest Industries, Inc., Appellants,**

**v.**

**Murphy H. BAXTER, John L. Cox, Pioneer Production Corporation, and Wing Corporation, Appellees.**

**No. B14–88–827–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 7, 1989.

Rehearing Denied Jan. 25, 1989.

Berry D. Bowen, Paul E. Harris, Steven B. Harris, Houston, for appellants.

Harper Estes, Elizabeth M. Marsh, Steven C. Kiser, Midland, for appellees.

Before MURPHY, ROBERTSON and SEARS, JJ.

## OPINION

ROBERTSON, Justice.

This is a declaratory judgment case. The sole issue on appeal is whether a tax shifting clause in an oil and gas lease places the burden on the lessee to pay all taxes levied under the Windfall Profit Tax Act of 1980. Appellants, Santa Fe Energy Company and Kirby Forest Industries, Inc. ("Santa Fe") are the lessors. Appellees, Murphy H. Baxter, John L. Cox, Pioneer Production Corporation and Wing Corporation ("Baxter") are the lessees. Baxter brought a declaratory judgment action claiming the tax shifting clause in the lease did not place the burden of paying all taxes levied under the windfall profit tax on the lessees. Both parties filed cross-motions for summary judgment in the trial court. The trial court granted Baxter's motion for summary judgment and denied Santa Fe's motion. In two points of error Santa Fe claims the trial court erred in denying its motion for summary judgment and in granting Baxter's motion. Concluding that the payment of the windfall profit tax is shifted by the tax shifting clause, we reverse and render judgment for Santa Fe.

In October 1973, Kirby Lumber Corporation (now Kirby Forest Industries, Inc.), as lessor, and Murphy H. Baxter, as lessee, entered into an oil, gas, and mineral lease covering certain acreage in Newton County, Texas. Kirby Forest Industries assigned its beneficial interest to Santa Fe Energy Company. Murphy H. Baxter is the operator of the lease. Baxter has assigned portions of the leasehold working interest to John L. Cox, Pioneer Production Corporation, and Wing Corporation.

Between 1980 and 1988, the Windfall Profit Tax Act imposed a tax on producers of domestic crude oil. 26 U.S.C. §§ 4986–4988 (repealed August 23, 1988). In compliance with the act, beginning March 1, 1980, Mesa Pipeline Company, the first purchaser of crude oil produced from the lease, withheld the tax imposed by the act from its production payments and remitted the tax to the United States Government. Baxter deducted that portion of the windfall profit tax withheld by Mesa and allocable to Santa Fe's interest from royalty payments to Santa Fe. Santa Fe demanded that Baxter reimburse the tax payments withheld from Santa Fe's royalty payments. Baxter agreed to reimburse Santa Fe, but reserved the right to bring this declaratory judgment suit.

Santa Fe asserts that paragraphs 2.1 and 7 of the oil, gas, and mineral lease shift payment of the windfall profit tax to Baxter, the lessee. Those paragraphs provide:

2.1 Lessee will deliver to or pay for, to Lessor as ROYALTIES free of expense to Lessor,—TWENTY-FIVE (25%) PERCENT—(a) of oil produced and saved from the Leased Premises[.]

7. During the life of this Lease, Lessee shall pay all taxes of every kind lawfully levied or assessed upon or against all or

any part of the oil and gas in or under said Leased Premises and/or the production thereof, including gross production, severance and transportation taxes, and all increases in taxes on the Leased Premises resulting from the prospecting for, discovery or production of oil and gas therefrom.

The trial court held that the terms of the lease are plain and unambiguous, that paragraphs 2.1 and 7 of the lease control the payment of taxes attributable to the leasehold or the production therefrom, that the windfall profits tax is a tax on incremental revenue and is not a production or severance tax, and that the windfall profits tax liability of lessor is not shifted to lessee by paragraphs 2.1 or 7 of the lease.

■ In an appeal of a trial court's grant and denial of cross-motions for summary judgment, we may review the propriety of both the grant of appellee's motion and the denial of appellants' motion. *See River Oaks Shopping Center v. Pagan*, 712 S.W.2d 190, 192–93 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). If we find reversible error, we may render judgment for appellant. TEX.R.APP.P. 81(c); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958). Because no material fact issues exist concerning the validity and enforceability of the lease, we will review whether the lease shifted the windfall profit tax as a matter of law. *See, Crawford v. Hanover Ins. Co.*, 582 S.W.2d 240, 241 (Tex.Civ.App.—Waco 1979, no writ).

In advancing its points of error Santa Fe asserts the tax shifting clause shifts the payment of the windfall profit tax to the lessee because the clause states that lessee "shall pay all taxes of every kind...." Baxter counters asserting paragraph 7 provides that lessee shall pay all taxes on the oil or the production or severance of the oil. He asserts that the windfall profit tax is a tax on profits, not a tax on oil or production or severance of oil. On the other hand, Santa Fe argues that the windfall profit tax is shifted by the clause because it is an excise, or severance tax, and that it is a tax in the nature of production.

In 1979 President Carter announced a program to remove price controls from domestic oil by September 30, 1981. By eliminating price controls, the President sought to encourage exploration for new oil and to increase production of old oil from marginally economic operations. He recognized, however, that deregulating oil prices would produce substantial gains (referred to as "windfalls") for some producers. The price of oil on the world market had risen markedly, and it was anticipated that deregulating the price of oil already in production would allow domestic producers to receive prices far in excess of their initial estimates. Accordingly, the President proposed that Congress place an excise tax on additional revenue resulting from decontrol.

Congress responded by enacting the Crude Oil Windfall Profit Tax Act of 1980. 26 U.S.C. §§ 4986–4988 The Act divides domestic crude oil into three tiers and establishes an adjusted base price and a tax rate for each tier. *Id.* The base prices generally reflect the selling price of particular categories of oil under price controls, and the tax rates vary according to the vintages and types of oil included within each tier. *Id.; United States v. Ptasynski*, 462 U.S. 74, 76, 103 S.Ct. 2239, 2240, 76 L.Ed.2d 427 (1983).

■ Baxter cites two Ninth Circuit cases, which hold that the windfall profit tax is an incremental tax on revenue, not a production or severance tax on oil. *Exxon Corp. v. City of Long Beach*, 812 F.2d 1256 (9th Cir.1987); *Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769 (9th Cir.1985). Baxter relies on those cases to support his argument that the windfall profit tax is not a tax on oil and is not shifted by paragraph 7. Determination of the character of the windfall profit tax, however, is a matter of state law. *See Amerada Hess Corp. v. Director, Div. of Taxation*, — U.S. —, 109 S.Ct. 1617, 1623, n. 9, 104 L.Ed.2d 58 (1989). Therefore, we will review the windfall profit tax, its legislative history, and the oil and gas lease to determine if the windfall profit tax is an incremental tax on

revenue or a production or severance tax on oil.

The statute creating the windfall profit tax described the tax imposed as an excise tax. 26 U.S.C. § 4986(a). The legislative history of that statute described the tax as an excise, or severance, tax applying to all crude oil produced in the United States. H.R.Rep. No. 304, 96th Cong., 2d Sess. 2, reprinted in 1980 U.S. CODE CONG. AND AD. NEWS 589. Paragraph 7 unambiguously requires that the lessee pay all taxes of every kind levied or assessed upon or against production of oil and gas, all severance taxes, and all increases in taxes resulting from production of oil and gas from the leased premises. Because paragraph 7 shifts payment of severance taxes, the payment of the windfall profit tax, as an excise, or severance tax, is shifted.

To the extent the payment of the windfall profit tax is the liability of the first purchaser of production, the windfall profit tax "result[s] from" production of oil and gas from the leased premises. As such, paragraph 7 shifts payment. Moreover, paragraph 2.1 of the lease requires the lessee to deliver royalties to the lessor free of expense. That mandate cannot be carried out if the lessor pays the windfall profit tax. To enforce the entire lease as written, we must construe paragraph 7 to shift the payment of the windfall profit tax. Santa Fe's first and second points of error are sustained.

In reviewing the character of the windfall profit tax and the oil and gas lease as a whole, we find that payment of the windfall profit tax is shifted to Baxter, the lessee. We reverse the judgment of the trial court and render judgment for Santa Fe.