**J.M. HUBER CORPORATION and Mobil Producing Texas & New Mexico, Inc., Appellants,**

v.

**SANTA FE ENERGY RESOURCES, INC., Appellee.**

No. B14–92–01163–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 3, 1994.

Rehearing Overruled March 17, 1994.

James Patrick Miller, Jennifer Hogan, Steven C. Salch and Ben Taylor, Susie Adams, Houston, for appellants.

Steven B. Harris, Richard H. Edelman, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

J.M. Huber Corporation and Mobil Producing Texas & New Mexico, Inc. appeal from a summary judgment granted in favor of appellee. Mobil brings three points of error, claiming the trial court erred in denying Mobil's special exceptions, in granting appellee's motion for summary judgment, and in denying Mobil's motion for summary judgment. Huber raises one point of error, challenging the grant of appellee's motion for summary judgment. We affirm.

Appellants are the lessees and appellee is the lessor under four oil and gas leases. These leases contain similar provisions regarding the payment of certain taxes. For example, the more recent leases contain the following provision:

> During the life of this lease, Lessee shall pay all taxes of every kind lawfully levied or assessed upon or against all or any part of the oil and gas in or under said Leased Premises and/or the production thereof, including gross production, severance and transportation taxes, and all increases in taxes on the Leased Premises resulting from the prospecting for, discovery or production of oil and gas therefrom.

The earlier leases contain essentially the same provision.[1]

---

1. These leases, entered during 1933–50, contain the following provision:

   It is expressly agreed that during the life of this lease Lessee shall pay all taxes of every kind lawfully levied or assessed upon or against all or any part of the minerals in or under said land and/or the production thereof, including gross production and severance taxes and

Congress enacted the Crude Oil Windfall Profit Tax Act of 1980, which imposed an "excise tax . . . on the windfall profit from taxable crude oil removed from the premise. . . ." 26 U.S.C. § 4986(a) (originally enacted as Act of April 2, 1980, ch. 45, 94 Stat. 230 and repealed 1988). Appellants began withholding amounts from sums due appellee as royalty payments and paid the windfall profit tax to the United States government. Appellee filed suit seeking a declaration that the tax shifting provisions of the leases shifted the burden of paying these taxes to appellants. The trial court granted appellee's motion for summary judgment, awarding appellee $400,850.37 plus interest from Mobil, and awarding appellee $130,367.67 plus interest from Huber. Other defendants found liable by the trial court are not part of this appeal.

In point of error one, Mobil contends the trial court erred in rendering judgment against Mobil and in denying its special exceptions. Mobil argues that appellee's supplemental petition, which contained no claims against Mobil, was actually an amended petition and effectively dismissed Mobil as a defendant.

■■■ A trial court has broad discretion in ruling on special exceptions. *Fuentes v. McFadden*, 825 S.W.2d 772, 778 (Tex.App.— El Paso 1992, no writ). We may reverse a trial court's ruling on special exceptions only if there has been a showing of abuse of discretion. *Id.* Abuse of discretion occurs if the trial court acts without reference to any guiding rules and principles, or acts in an arbitrary or unreasonable manner. *Id.* Accordingly, we must determine whether the trial court abused its discretion in denying Mobil's special exceptions.

■■■ Courts look to the substance of a plea for relief and not merely to the form of title given to it when determining the nature of a pleading. *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex.1980). A supplemental petition is a response to the last preceding pleading by the other party and does not repeat allegations previously pleaded unless such repetition is necessary. Tex.

R.Civ.P. 69. An amended petition, on the other hand, adds or withdraws from that which was previously pleaded for correction or to plead new matter. Tex.R.Civ.P. 62. An amended petition also supersedes all prior petitions and operates to dismiss parties and causes of action to the extent they are omitted from the amended pleading. *Radelow–Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d 558, 559–60 (Tex.App.— Dallas 1987, writ ref'd n.r.e.) (upholding summary judgment in favor of Pamex where amended petition contained no claims against Pamex); *Evans v. Hoag*, 711 S.W.2d 744, 746 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (upholding summary judgment where defendant was not named in first amended petition and not reserved with citation when he was re-named in third amended petition).

Mobil cites two cases in support of its contention that the supplemental petition is actually an amended petition. *See Hawkins v. Anderson*, 672 S.W.2d 293 (Tex.App.— Dallas 1984, no writ); *Claude Regis Vargo Enterprises, Inc. v. Bacarisse*, 578 S.W.2d 524 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). In *Hawkins*, the plaintiff filed an original petition alleging negligence. 672 S.W.2d at 294. The plaintiff later filed a pleading labeled "supplemental" petition, incorporating by reference the allegations of the original petition and adding a DTPA claim. *Id.* at 294–95. Because the "supplemental" pleading added a new claim, the court held that this petition should be treated as an amended petition. *Id.* at 295. The court did not, however, hold that the negligence claim had been dropped. Instead, the court held that the incorporation by reference of the allegations in the original petition, although improper, was a pleading defect to which the defendant should have filed a special exception. *Id.*

In *Claude Regis*, the plaintiff filed a supplemental petition three weeks after the entry of summary judgment in favor of defendants. 578 S.W.2d at 528. The court held that this petition was an amended petition because it alleged new matters constituting

transportation taxes, and all increases in taxes on the land resulting from the prospecting for

and discovery and/or production of minerals therefrom.

additional claims to those pled in the prior pleadings. *Id.*

Appellee's first amended original petition, filed in 1984, is 97 pages long and names over 35 defendants, including Mobil. It contains 27 counts essentially alleging that the defendants breached the tax shifting provisions of the various leases. The supplemental petition, filed in 1991, is styled "SANTA FE ENERGY COMPANY V. MOBIL PRODUCING TEXAS & NEW MEXICO, INC., *et al.*" This petition is seven pages long and contains eight counts, which incorporate and add to specified counts contained in the amended petition. None of these counts involve claims against appellants. Unlike the supplemental petitions in *Hawkins* and *Claude Regis*, the supplemental petition in this case does not allege new causes of action, but alleges additional damages incurred since the filing of the original amended petition. Thus, we find *Hawkins* and *Claude Regis* distinguishable.

The supplemental petition filed in this case was not intended to be an amended petition because it does not restate facts or claims presented in the amended original petition. In its opening paragraph, the supplemental petition states that it "supplements [appellee's] pending First Amended Petition...." Because it was not intended to be an amended pleading, we find inapplicable those cases holding that omission of a defendant in an amended pleading operates as a voluntary dismissal of the omitted defendant. *See, e.g., Webb v. Jorns,* 488 S.W.2d 407, 409 (Tex. 1972).

■ Texas courts find petitions sufficient if they give fair and adequate notice of the facts upon which the pleader bases his claim. *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex. 1982). The supplemental petition in this case was clear in its intention to increase certain allegations of damages. We believe that all defendants had fair notice of the claims alleged against them and the facts upon which these claims were based. Because this petition was not an amended petition omitting defendants and appellee did not allege any new causes of action or add new parties in the supplemental petition, we hold that the trial court did not abuse its discretion in

denying Mobil's special exceptions and in granting judgment against Mobil. We overrule point of error one.

■ We turn next to the point of error raised by both appellants that the trial court erred in granting appellee's motion for summary judgment. Both appellants argue that the tax shifting clauses in the leases do not apply to taxes levied pursuant to the Windfall Profit Tax Act of 1980 and that the congressional purpose of the Windfall Profits Tax is thwarted if appellants are forced to pay the tax. Mobil further argues that appellee's suit is expressly barred by federal law and by explicit provisions of the leases, and that appellee has been paid the full amount due from Mobil with respect to the purchase price of the royalty crude oil.

We address first appellants' contention that the lease provisions do not apply to the Windfall Profits Tax. In its motion for summary judgment, appellee relied upon the case *Santa Fe Energy Co. v. Baxter,* 783 S.W.2d 643 (Tex.App.—Houston [14th Dist.] 1989, writ denied) which involved the same issue and essentially the same type of lease provisions. In reviewing a trial court's grant of summary judgment, we must determine whether the movant established there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985).

■ In *Baxter,* several lessees brought a declaratory judgment action against Santa Fe Energy, the appellant here, seeking a declaration that the tax shifting clause in the lease did not place the burden of paying windfall profits taxes on the lessees. 783 S.W.2d at 644. Both sides filed motions for summary judgment and the trial court granted the lessees' motion. *Id.* Santa Fe Energy appealed and a panel of this court reversed and rendered judgment in favor of Santa Fe Energy. *Id.* This court first held that determination of the character of the windfall profits tax was a matter of state law. *Id.* at 645. After reviewing the statute, its legislative history, and the lease, the court found that the tax was an excise or severance tax and that the tax shifting provisions of the

lease shifted payment of severance taxes to the lessees. *Id.* at 645–46.

Because *Baxter* is determinative of the issues in the instant case, appellants contend that it is wrongly decided and that we should overrule it. Appellants first argue that, contrary to the holding in *Baxter*, construction of the windfall profits tax act is a question of federal, and not state, law. Appellants argue that we are bound by the decisions of lower federal courts regarding construction of this federal taxing act. We conclude that we are not.

Although "a decision of a federal court, other than the Supreme Court, may be persuasive in a state court on a federal matter, it is, nevertheless, not binding, since the state court owes obedience to only one federal court, namely, the Supreme Court." *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 505 (Tex.App.—Austin 1991, writ denied); *Barstow v. State*, 742 S.W.2d 495, 501 n. 2 (Tex.App.—Austin 1987, writ denied). *See Penrod Drilling Corp. v. Williams*, 36 TEX. SUP.CT.J. 1011, 1013 (June 16, 1993) (motion for rehearing pending). Appellants cite *Holmes v. Olson*, 587 S.W.2d 678 (Tex.1979) for the proposition that Texas courts are obligated to follow federal court decisions. In construing its own opinion in *Olson* and the supreme court's per curiam opinion refusing application for writ of error, the Austin court of appeals noted that they did not intend to hold that state courts are bound by lower federal court opinions, but that such decisions are entitled to due weight and consideration. *Carlisle*, 805 S.W.2d at 505. The Austin court further noted that the supreme court reiterated and approved this conclusion by stating that a state court's review of federal statutes "*should* be governed by the federal court's construction." *Id.* (quoting *Holmes v. Olson*, 587 S.W.2d 678, 679 (Tex. 1979) (per curiam)). Thus, we hold that the opinions of lower federal courts interpreting the windfall profits tax are persuasive, but not binding, in this appeal.

Appellants cite two federal opinions from the same circuit,[2] one of which relies entirely on the other, for the proposition that federal courts uniformly characterize the windfall profits tax as a tax on incremental value and not as an excise or severance tax. *See Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 773 (9th Cir.1985) *followed by Exxon Corp. v. City of Long Beach*, 812 F.2d 1256, 1259 (9th Cir.1987). The original decision, *Tenneco West*, involved a tax shifting clause similar to the one in the present case. In pertinent part, that clause provided that Marathon was to pay: "any and all taxes ... upon or referable to any operations or acts of [Marathon] ... including ... the drilling or operation of any well or wells, the production, extraction, severance or removal of any oil ..., the processes, refining, storage or use thereof, [and] the sale ... or the transportation thereof away from the demised premises." 756 F.2d at 771. The court relied on a state law case containing an almost identical clause which held that such a clause did not encompass the windfall profits tax. *Id.* (relying on *Crocker Nat'l Bank v. McFarland Energy, Inc.*, 140 Cal.App.3d 6, 189 Cal.Rptr. 302 (2d Dist.1983)).

Rather than concluding their opinion with this holding, the court then embarked on a dictum determination of the character of the windfall profits tax. *Id.* 756 F.2d at 772. Within this discussion, the court found that the windfall profits tax is a tax on incremental value, and not an excise tax, and, based on this finding, the court held that the tax clause did not shift the burden of paying the windfall profits tax to Marathon. *Id.* It is to this dictum that appellants point in arguing that the federal courts characterize the windfall profits tax as a tax on incremental value rather than an excise or severance tax. We are not inclined to rely on federal court dictum when a Texas case, from this court, contains a substantially identical tax clause and resolves the very issue we must address.[3]

Appellants also cite to several Texas cases regarding shifting of tax burdens in oil and

---

2. Appellants also cite a Supreme Court opinion in which the court noted the Internal Revenue Service's statement that the windfall profits tax resembles an income tax. *Amerada Hess Corp. v. Director, Division of Taxation, New Jersey Dept. of the Treasury*, 490 U.S. 66, 77 n. 9, 109 S.Ct.

1617, 1624 n. 9, 104 L.Ed.2d 58 (1989). We do not find this statement relevant to our analysis.

3. Appellee counters these cases with *Humble Exploration Co. v. Amcap Petroleum Assoc.*, 658

gas leases. *Stanolind Oil & Gas Co. v. Terrell*, 183 S.W.2d 743 (Tex.Civ.App.—Galveston 1944, writ ref'd); *Cities Service Oil Co. v. McCrory*, 191 S.W.2d 791 (Tex.Civ. App.—Fort Worth 1945, no writ); *Fain–McGaha Oil Corp. v. Murko Oil & Royalty Co.*, 128 Tex. 646, 101 S.W.2d 547 (1937); *Felber v. Sklar Oil Co.*, 235 S.W.2d 481 (Tex. Civ.App.—Texarkana 1950, writ ref'd). We find these cases inapplicable in that each involves interpretation of a "free of all cost" type provision.[4] Although the leases in this case also contain a similar provision, our holding primarily concerns the tax-shifting provision and not the "free of all cost" provision, although the "free of all cost" provision is supportive of our holding.

As previously discussed, a panel of this court held in *Baxter* that the windfall profits

tax was similar to an excise or severance tax and that liability for payment of the tax resulted from production of oil and gas. 783 S.W.2d at 646. Thus, the court held that the tax shifting clause in the lease shifted the burden of paying the windfall profits tax to the lessee. *Id.* We decline appellants' invitation to overrule *Baxter*. Because *Baxter* is determinative of the issue presented in this case and supports the trial court's ruling, we find no error by the trial court in granting summary judgment in favor of appellee.

■ Mobil further complains that appellee's suit, seeking recovery of the amount of windfall profits tax withheld by Mobil, is expressly barred by federal law. In particular, Mobil contends that 26 U.S.C. 4995(a)(1)(B) renders Mobil immune from appellee's suit. In support of this contention,

S.W.2d 860 (Tex.Civ.App.—Dallas 1983, writ ref'd n.r.e.). In *Humble*, the parties entered into prospect agreements defining "payout" as the date when non-operators have received from the net proceeds from sale of 75% of all production, "after deduction of production, severance or other similar taxes," an amount equal to all costs paid by non-operators in connection with drilling and operating the well prior to payout. *Id.* at 862. The non-operators brought a declaratory judgment suit seeking construction of this provision and a declaration that the windfall profits tax was a cost the non-operators were entitled to fully recoup in arriving at payout. *Id.* at 861–62. The appellate court affirmed the trial court's summary judgment in favor of the non-operators. *Id.* at 863. The court did not determine whether the windfall profits tax was a tax on production or severance. *Id.* Instead, the court determined that the non-operators were entitled to recoup their investment outlay from the net proceeds of production. *Id.* Because the windfall profits tax was part of the investment outlay, the court held that the non-operators could recoup this payment also. *Id.* We find this case easily distinguishable from the present case since the *Humble* court did not determine whether the windfall profit tax was a tax on production or severance.

**4.** In *Stanolind*, the lease required the lessor to pay the lessee, in addition to royalties, a net sum of $64,000.00 "without deduction of any kind or character." *Id.* at 744. The lessee deducted appellee's share of the gross production tax from the $64,000.00 and appellee brought suit to recover the amount withheld. *Id.* The court found the intention to exclude deduction of the gross production tax from the $64,000.00 oil payment as clear as if the gross production tax statute were part of the contractual provision. *Id.* The court further noted that laws existing at

the time of contracting "enter into and form a part of [the contract], as if they were expressly referred to, or incorporated in its terms." *Id.*

In *McCrory*, the lease provided for an oil payment, "free of cost or expense of development or operation" to the lessor. 191 S.W.2d at 792. The issue was whether the quoted terms shifted the burden of paying the gross production tax from the lessor to the lessee. *Id.* The court held that this language was not broad enough to encompass the gross production tax. *Id.* at 793.

In *Fain–McGaha*, the court also determined who was liable for the gross production tax. 101 S.W.2d at 548. The relevant lease provisions provided that the buyer would "pay all the expenses necessary in the development and operation of said lease" and that the seller's only expense would be a flat $1,666.66 for each completed well, plus a flat operating charge of $0.25 per barrel for one-third of the oil produced. *Id.* at 547. The lease further provided that the seller was not personally liable for any expenses of development and operation. *Id.* at 548. The court held that the contract did not include the production tax as an obligation to be paid totally by the buyer. *Id.* at 550.

Finally, in *Felber*, the contractual provision entitled the assignee to receive "the sum of $—— net, free of all costs and expense of drilling for and operating for the production of and producing the said oil, gas and casinghead gas...." 235 S.W.2d at 482. The medium of payment was oil, not cash. *Id.* at 484. The issue before the court was whether the assignees were liable for the gross production tax. *Id.* at 482. The court ruled that the phrase "free of all costs" modified and explained the word "net," and that it did not relieve the assignee of the burden of the gross production tax. *Id.* at 484.

Mobil cites a number of cases precluding suits by employees against employers to recover income taxes withheld. *See, e.g., Robinson v. A & M Electric, Inc.,* 713 F.2d 608 (10th Cir.1983). We agree that appellee would have no cause of action against Mobil for the withholding of windfall profits taxes if there were no contract expressly shifting the liability for such payment to Mobil. Since the parties agreed, however, to this tax shifting clause, the cases cited by Mobil are inapplicable.

■ Mobil next argues that appellee's suit is a nullity because appellee has been paid the full amount due from Mobil with respect to the purchase price of appellee's royalty crude oil. Mobil cites 26 U.S.C. 4495(a)(4) that provides in part that the "producer of any domestic crude oil shall be treated as having paid any amount withheld with respect to such oil under this subsection." Based on this section, Mobil claims that its payment of the windfall profits tax constituted payment to appellee. We disagree. This argument ignores the tax shifting clauses in the leases which shift responsibility for payment of this tax to Mobil. Furthermore, the leases provided that appellee's royalty interest was to be free of cost or expense. Mobil withheld the windfall profits tax from appellee's royalty share. Because Mobil was liable for the payment of these taxes and this amount was not to be deducted from appellee's royalty payment, Mobil's withholding of the taxes from appellee's royalty payment cannot constitute payment to appellee.

■ Mobil further argues that explicit provisions of the leases bar appellee's suit. Mobil notes that clauses in the leases provided that they are subject to all valid federal laws, rules and regulations. Based on these clauses, Mobil reasons that the obligations of the parties were "subject to reformation, limitation, or modification in order to conform them to the requirements or dictates of laws, rules, and regulations of any governmental authority, state or federal, to prevent the leases from becoming illegal or void as being contrary to law or public policy, and to protect the parties from the dilemma of either breaching the provisions of the lease or vio-

lating or contravening laws." The tax shifting clauses, however, do not require a violation of the law. Instead, the clauses shift the obligation of complying with the law, in the form of payment of the windfall profits tax, to Mobil. We find no merit to Mobil's argument that appellee's suit is barred by the provisions of the leases making it subject to federal laws.

■ Finally, both appellants contend that requiring them to assume liability for the windfall profits taxes in this case defeats the congressional purpose of the tax by allowing appellee to receive the very windfall Congress sought to tax. We are unpersuaded by this argument. The parties entered into these leases and agreed to the tax shifting clauses.

Accordingly, we find no error by the trial court in granting appellee's motion for summary judgment and we overrule Huber's sole point of error and Mobil's second point of error. Having upheld the summary judgment in favor of appellee, we do not reach Mobil's third point, challenging the trial court's denial of Mobil's motion for summary judgment.

We affirm the trial court's judgment.