LEE M. BASS, INC., Appellant,

v.

SHELL WESTERN E &
P, INC., Appellee.

No. 04–97–00165–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 26, 1997.

Rehearing Overruled Dec. 30, 1997.

Dee J. Kelly, E. Glen Johnson, Greg S. Gober, Kelly, Hart & Hallman, P.C., Fort Worth, David T. Garcia, Falfurrias, for Appellant.

Todd Malejan, Shell Oil Co. (Legal Dept.), Houston, W. Mark Cotham, Mitchell E. Ayer, David A. Furlow, Morris & Campbell, P.C., Houston, Joe Frank Garza, Alice, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

Appellant, Lee M. Bass, Inc. ("Bass"), appeals a summary judgment granted in favor of appellee, Shell Western E & P, Inc. ("Shell"), in a declaratory judgment action. Bass brought the suit contending that Shell was responsible for reimbursing Bass for ad valorem taxes assessed against Bass's oil and gas interest. Bass also appeals the trial court's denial of a summary judgment in its favor. We affirm the trial court's judgment.

### CONTRACTUAL DISPUTE

Bass and Shell are parties to an oil and gas lease.[1] The lease contains the following paragraph regarding Shell's obligation to reimburse Bass for taxes:

Without limiting any of the foregoing [regarding royalties payable], Lessee agrees that Lessee will, in addition, reimburse Lessor monthly for all production, severance, gathering, sales, excise and similar taxes imposed upon or assessed with respect to or measured by or charged against the production or value of production or proceeds of the sale of production attributable to Lessor's royalty interest and which are leveled [sic] and assessed by the State of Texas or by any county or municipal corporation or other local governmental taxing authority of the State of Texas.

The parties dispute whether Shell is required to reimburse Bass for ad valorem taxes based on the foregoing provision.

### STANDARD OF REVIEW

In reviewing a summary judgment on appeal, we must determine whether the movant met its burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *J.M. Huber Corp. v. Santa Fe Energy Resources, Inc.*, 871 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1994, writ filed). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in the non-movant's favor. *Id.* When both parties file motions for summary judgment and one such motion is granted, we must review all of the issues presented and, if reversible error is found, render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988); *Santa Fe Energy Co. v. Baxter*, 783 S.W.2d 643, 645 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

Summary judgment is appropriate in cases involving the interpretation of an unambiguous document. *Bishop v. National Loan Investors, L.P.*, 915 S.W.2d 241, 245 (Tex.App.—Fort Worth 1995, writ denied); *Tri County Service Co. v. Nationwide Mutu-*

---

1. The oil and gas lease was originally entered into on May 23, 1977, between Barbara Woodward Lips, individually and as independent executrix of the Estate of Charles Storch Lips, as lessor ("Lips"), and Hilliard Oil & Gas, Inc., as lessee ("Hilliard"). In 1986, Bass purchased the land covered by the lease; however, Lips retained a life estate in the minerals. In 1989, Hilliard assigned its interest under the lease to Shell Oil Company, who conveyed the interest to Shell in 1992. In 1995, Lips died, and Bass became owner of the mineral estate and lessor under the oil and gas lease.

*al Ins. Co.*, 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied). In this case, neither party contends that the oil and gas lease is ambiguous.[2] *See Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 720 (Tex. App.—San Antonio 1994, writ denied)(holding ambiguity issue waived if not properly pled). Therefore, summary judgment was appropriate, and the only issue to be decided is whether the trial court correctly interpreted the parties' rights and responsibilities under the oil and gas lease. *See Santa Fe Energy Co. v. Baxter*, 783 S.W.2d at 645 (whether lease shifted tax burden to be determined as matter of law where no material fact issue exists).

### RULES OF CONSTRUCTION

■■■ An oil and gas lease is simply a contract. *TBS Exco, Inc. v. E.N. Smith, III Energy Corp.*, 818 S.W.2d 417, 420 (Tex. App.—Texarkana 1991, no writ). Applying basic rules of contract interpretation, our primary concern is to determine the parties' true intentions. *See Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). We must consider each of the lease provisions in view of the lease as a whole and give effect to each provision. *Id.* "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Id.* After applying these rules of construction, the trial court determined that Shell was not responsible for reimbursing Bass for ad valorem taxes. We agree with the trial court.

### CONSTRUCTION OF LEASE

■■■ Shell was responsible for reimbursing Bass for taxes "imposed upon or assessed with respect to or measured by or charged against the production or value of production or proceeds of the sale of production attributable to [Bass's] royalty interest" that were similar to "production, severance, gathering, sales, [and] excise [taxes]." Bass argues that in order to give meaning to the phrase "value of production," we must interpret the phrase to mean the "value of *future* production." Bass then concludes that ad valorem taxes are reimbursable because such taxes take into account the value of future production.[3] *See* TEX. TAX CODE ANN. § 23.175 (Vernon Supp.1997)(recognizing that one acceptable technique for appraising the market value of an oil and gas interest for ad valorem tax purposes is to take into account the future income from the sale of oil or gas to be produced from the interest); *see also* 34 TEX. ADMIN. CODE § 9.4031 (West 1997)(specifying methods and procedures to discount future income from the sale of oil or gas from the interest to present value). However, whether the market value of an oil and gas interest for ad valorem tax purposes takes into account the value of future production is not the issue presented in this case. Rather, we must determine whether the oil and gas lease obligates Shell to reimburse Bass for ad valorem taxes.

■■■ On the date the lease was signed, the lessor's obligation to pay ad valorem taxes was well-established, and ad valorem taxes could clearly have been included among the express list of reimbursable taxes. If ad valorem taxes were considered to be a part of the class of taxes that were to be reimbursed, they should have been listed, and we may imply that they were intended to be excluded by their absence. *First Nat'l Bank of Luling v. Nugent*, 384 S.W.2d 224, 226 (Tex.App.—San Antonio 1964, writ ref'd n.r.e.). Therefore, the express wording of the lease provision does not support Bass's position.

Despite the absence of ad valorem taxes from the express list, Bass contends that ad valorem taxes must be reimbursable in order to give effect to the phrase "value of production." Bass asserts that "[t]he only instance in which it is necessary to place an appraised

---

**2.** Although ambiguity was asserted in Shell's Second Amended Answer and Counterclaim, this pleading was stricken by the trial court as untimely filed.

**3.** Santiago Solis, the engineer who appraised the property for tax purposes, testified in his deposition that ad valorem taxes are based on the value attributable to remaining recoverable reserves; however, Mr. Solis acknowledged that such value is determined based on forecasted future production.

worth on production estimating the monetary value of the production is when the value is assigned to production which is forecast to take place in the future and for which the exact sales price and volume produced is unknown." This contention is belied, however, by the means by which at least one of the listed taxes is assessed in this state.

Under chapters 201 and 202 of the Texas Tax Code, a production tax is imposed on the market value of gas and oil produced in this state. TEX. TAX CODE ANN. §§ 201.052, 202.052 (Vernon 1992); see also TEX. TAX CODE ANN. § 201.101 (Vernon 1992)(defining market value of gas); TEX. TAX CODE ANN. § 202.053 (Vernon 1992)(defining market value of oil). Therefore, one of the expressly listed taxes is based on the "value of production," thereby giving independent meaning to the use of that phrase in the lease. Applying the language of the lease provision, Shell is required to reimburse Bass for production taxes because they are "production . . . taxes imposed upon or assessed with respect to or measured by or charged against the . . . value of production . . . and . . . are assessed by the State of Texas". By giving the phrase "value of production" this meaning, we comply with the rule of construction that requires us to give language its ordinary meaning by not modifying or qualifying the term "production" with the term "future." See County of Maverick v. Texas Ass'n of Counties Workers' Compensation Self–Insurance Fund, 852 S.W.2d 700, 705 (Tex.App.—San Antonio 1993, no writ).

Bass also contends that ad valorem taxes must be reimbursable because they are the only taxes assessed by the county or any other local governmental entity. Bass asserts that by failing to interpret the lease provision in this manner, we would ignore the use of the word "county" in the provision. We disagree.

The word "county" appears at the end of the lease provision to describe the various governmental entities that could assess a tax that would be reimbursable under the provision, i.e., the State of Texas *or* the county *or* a municipal corporation *or* other local governmental taxing authority of the State of Texas. However, it is only those types of taxes that are identified at the beginning of the provision that are actually reimbursable. In other words, it is the nature of the tax— not the type of taxing entity—that determines whether the tax is reimbursable. While the lease provision may have contemplated the possibility that various governmental entities might, in the future, assess the type of tax that would be reimbursable, this does not mean that all taxes presently assessed by the listed taxing authorities are reimbursable simply because the taxing authority is among the listed governmental entities.

This court has recently reiterated that production means the actual extraction of the mineral from the soil. *TransAmerican Natural Gas Corp. v. Finkelstein,* 933 S.W.2d 591, 596 (Tex.App.—San Antonio 1996, writ filed). Applying this established definition of production and giving the phrase "value of production" its plain, ordinary, and generally accepted meaning, we conclude that the phrase "value of production" refers to the value of oil and gas that has been actually extracted.[4] Therefore, we hold that the trial court did not err in granting summary judgment in favor of Shell because the oil and gas lease does not require Shell to reimburse Bass for ad valorem taxes.

The judgment of the trial court is affirmed.

---

4. Although we agree with Bass that we are not bound by federal precedent, such precedent may be persuasive. *See J.M. Huber Corp. v. Santa Fe,* 871 S.W.2d at 846. We note that our decision is consistent with federal agency interpretations. *See Colorado Interstate Gas Co.,* 65 F.E.R.C.

¶ 61,292 (1993)(recognizing that Texas ad valorem tax is not a production, severance, or similar tax and overruling *Sun Exploration & Production Co. v. Northern Natural Gas Co.,* 36 F.E.R.C. ¶ 61,093 (1986)); *see also Mobil Oil Corp. v. Federal Power Commission,* 55 F.P.C. 917 (1976).