**WORLD HOSPITALITY LTD., INC., Plaintiff,**

v.

**SHELL OFFSHORE, INC., et al., Defendants.**

Civ. A. No. H–86–4670.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 10, 1988.

Interlocutory Judgment Nov. 11, 1988.

Ted Hirtz, Ted Hirtz & Associates, Houston, Tex., for plaintiff.

D. Mitchell McFarland, Liddell, Sapp, Zivley, Hill & Laboon, Houston, Tex., for intervenor, Texas Commerce Bank Ass'n.

James J. Sentner, Kimberley A. Jacobson, Haight, Gardner, Poor & Havens, Houston, Tex., for First City Nat. Bank.

Fred W. Stumpf, Oliver, Stumpf, Falgout & Urquhart, Houston, Tex., for Shell Offshore, Inc., Phillips Petroleum Co.

Sherman Burnett, Nordrill Inc., Beaumont, Tex., for O & U Drilling Inc.

## MEMORANDUM ON SUMMARY JUDGMENT

HUGHES, District Judge.

This case requires an ordering among a supplier, lease holder, drilling contractor, and lender of their priorities of interest in the disbursement of the proceeds from the drilling of two wells on the Outer Continental Shelf offshore Texas. The supplier prevails.

1. *Parties.*

A. Shell Offshore is the holder of a lease from the United States on the Outer Continental Shelf, and it hired Nordrill to drill two wells.

B. Nordrill is an offshore drilling contractor that operated two drilling rigs, the *Steeler* and the *Gulfdrill;* Nordrill is either a successor to O & U or a closely affiliated company.

C. World Hospitality is a caterer to the offshore industry, supplying materials and labor to feed the offshore crews.

D. First City National Bank of Houston is a commercial bank. The bank had taken an assignment of the income from the *Steeler* to it from Nordrill. The bank had no assignment from the *Gulfdrill.*

2. *Facts.*

Shell holds a federal lease on the Outer Continental Shelf. The lease site is about nine miles seaward, to the southeast of Calhoun and Matagorda Counties, Texas. Shell had a master drilling contract with Nordrill. For each well the master agreement was supplemented by a drilling order, which added a specific well site, depth, and time under the general provisions of the master contract. The master contract was signed in December 1984, and the drilling order for the *Steeler* was dated in May 1985 and for the *Gulfdrill* in September 1985.

Before the master contract and before the drilling order for this well, in 1981, Nordrill assigned to First City the proceeds from the *Steeler.* The bank did not have an assignment from Nordrill for the *Gulfdrill.* After the assignment, Nordrill began to drill the wells for Shell. World Hospitality supplied catering to both rigs, of which about $90,000 remains unpaid from the *Steeler* and $332,000 from the *Gulfdrill.* Shell has retained about $378,000 from the funds due on the *Steeler*'s work. World Hospitality has filed liens for the amounts due against the drill sites.

In June 1986, Nordrill brought a suit in Jefferson County, Texas, to enjoin World Hospitality from asserting liens against the Shell tracts. From June 17 to October 20, 1986, World Hospitality was prohibited by court order from filing its liens against Nordrill and Shell. World Hospitality filed a lien affidavit with Minerals Management Service in New Orleans, Louisiana, in November 1986, and amended that in December. World Hospitality filed its lien affidavits in the property records of Calhoun County and Matagorda County in March 1987, within six months if the injunction period is ignored.*

3. *Between First City and World Hospitality.*

■ First City wants its assignment from Nordrill to take precedence over Shell's contract with Nordrill. The way First City says this could be accomplished is to treat the drilling order as the actual contract between Shell and Nordrill, relegating the master contract to a set of standard terms to be incorporated in the drilling order. If the drilling order is the Shell–Nordrill contract, First City still only gets by assignment the rights Nordrill had, and Nordrill had only a conditional right to the proceeds from the *Steeler.* One of the incorporated terms of the *Steeler* drilling order was the right of offset that Shell retained against Nordrill. First City gets what Shell owed Nordrill, but Shell does not owe Nordrill on the *Steeler* contract because of the unpaid supplier on the *Gulfdrill* job. The receivable was contingent. Tex.Bus. & Com.Code Ann. § 9.318(a)1 (1988).

4. *Subject of Lien Claim.*

■ First City argues that offshore catering services are not of the class of "la-

---

*Chronology.*

| | | | Days Elapsed |
|---|---|---|---|
| September 28, | 1981 | Nordrill assignment to First City | |
| December 20, | 1984 | Shell–Nordrill master contract | |
| May 31, | 1985 | Gulfdrill drilling order | |
| September 15, | 1985 | Steeler drilling order | |
| June 17, | 1986 | Nordrill's injunction issued | |
| July 8, | 1986 | Last day supplies furnished | 0 |
| October 20, | 1986 | Injunction is dissolved | 104 |
| November 17, | 1986 | MMS filing | 132 |
| March 24, | 1987 | Matagorda County filing | 259 |
| March 25, | 1987 | Calhoun County filing | 260 |

bor or ... supplies" that mineral property liens are intended to protect. While a caterer may not have the traditional oil business mystique of a well logger or mudman, it had men on the job site performing an essential function. When the caterer provides victuals and personnel on the well site, its receivable supports a lien.

### 5. *Perfection of the Lien.*

██ Because Texas law applies to the perfection of a lien claim on the Outer Continental Shelf adjacent to Texas, to perfect its lien against Shell's lease World Hospitality is required to notify Shell and to file a lien claim affidavit in a real property records of the nearest county within six months of the last day labor and supplies were furnished. Tex.Prop.Code Ann. § 56.021 (1984); 43 U.S.C. § 1333(a)(2)(A).

World Hospitality's lien affidavits were filed more than six months from the last date supplies were furnished, but World Hospitality filed them within six months if the period of the injunction is deducted. The existence of an injunction tolls the running of the filing deadline. This injunction was not a mere interference, it was a direct prohibition of the very act needed to perfect the lien.

Shell urges the court to devise a rule that: After the injunction was dissolved and before the original time limit passed, if it were possible to file the affidavit, World Hospitality should be required to have met the unextended limit of six months.

Although Shell was not a party to the injunction suit, it had prompt notice of the claim under the statute. The difficulty this extension might cause Shell is minimized by Shell's ability to verify the status of the claim with both its contractor, Nordrill, and the creditor, World Hospitality.

The debtor will not be allowed to shorten the time allowed the creditor merely by attempting to use other legal mechanisms that could easily erode much more than six months even when the attempt is transparently meritless. The Texas lien law grants the supplier a free six months.

### 6. *Bankruptcy Act.*

World Hospitality argues that it should be allowed two years to perfect its liens because it went bankrupt and the Code allows the trustee two years after an order for relief "to commence an action." 11 U.S.C. § 108(a)(2). The opposite argument is that the sixty-day period to file a "demand, [or] notice" applies. 11 U.S.C. § 108(b)(2). The sixty-day period is the one provided for perfections under the U.C.C. or lien statutes.

Because the filing period's running was tolled by the injunction, it is not necessary to answer this argument except in the alternative; however, World Hospitality had sixty days after filing its petition in bankruptcy to perfect, to exercise, or to notify third parties if the deadline for the act would have expired within the sixty days. It did not perfect its claim within these limits.

### 7. *Mineral Management Service.*

██ World Hospitality filed its lien claim with the New Orleans office of the Mineral Management Service on November 17, 1986, which was within twenty-eight days of the injunction's dissolution, and within 180 days of the last supplies. World Hospitality urges that this registration be held to satisfy the lien requirements. It offers two justifications for substituting the MMS office for the state-determined filing office. First, the local recording requirement forces the lien claimant to guess about the correct seaward extension of the county lines. The difficulty facing the offshore claimant is no worse than that facing onshore claimants near county and state lines, and it can easily be cured by multiple filings, as was done in this case. Second, using the MMS office would give those dealing with federal offshore leases a central office for each major region; the MMS office in New Orleans would contain all of the property records instead of having them spread among the forty-one counties and parishes that abut the Gulf of Mexico. Although this position has some logic, people interested in land titles are accustomed to the locations and methods of the local agencies, and more important, Congress

has made the policy choice to use the counties, by which choice this court is bound.

The holding here is that the filing by World Hospitality with MMS does not comply with the Outer Continental Shelf Lands Act's importation of adjacent-state law to perfect a supplier's lien on an owner's mineral leasehold interest.

8. *Conclusion.*

Because the injunction extended the filing period long enough to make the county filings on time, World Hospitality has perfected liens against Shell's leasehold. Because of the contract between Shell and Nordrill, Shell can apply the proceeds of the *Steeler* to the claim by World Hospitality against the *Gulfdrill* free of First City's security interest in them. Shell, therefore, may pay World Hospitality all the withheld contract proceeds to World Hospitality to discharge Nordrill's unpaid account; if the aggregate funds exceed the debt Nordrill owes World Hospitality, the balance will be left on the *Steeler* to First City's benefit.

### INTERLOCUTORY JUDGMENT

The claim of World Hospitality Ltd., Inc., to the contract proceeds due from Shell Offshore, Inc., to Nordrill precede the claim of First City National Bank.

If the parties cannot agree on the precise amount of World Hospitality's claim by December 20, 1988, World Hospitality shall move for an evidentiary hearing to liquidate the claim.

Signed on November 11, 1988, at Houston, Texas.