

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00088-CV

**ELG OIL, LLC** and ELG Utility, LLC,
Appellants

v.

**STRANCO SERVICES, LLC**,
Appellee

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 16-03-00056-CVK-A
Honorable Walden E. Shelton, Judge Presiding[1]

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: October 9, 2019

REVERSED AND REMANDED

ELG Oil, LLC and ELG Utility, LLC appeal a summary judgment granted in favor of Stranco Services, LLC allowing Stranco to foreclose on a mineral subcontractor's lien. ELG asserts the trial court erred in granting the summary judgment because Stranco failed to conclusively establish it: (1) furnished or hauled material, machinery or supplies used in mineral activities under contract with a mineral contractor, or (2) performed labor used in mineral activities

---

[1] The Honorable Stella H. Saxon granted the partial summary judgment in favor of the appellee. The Honorable Walden E. Shelton signed the final judgment.

under contract with a mineral contractor. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## BACKGROUND

ELG entered into a contract with Turn-Key Specialists, Inc. to add natural gas bullet storage tanks to the KDB Central Treatment Facility (the "Facility"),[2] and Turn-Key entered into a subcontractor agreement with Stranco.[3] On March 3, 2016, Stranco filed the underlying lawsuit against Turn-Key and ELG alleging various claims, including a claim to foreclose on a mineral lien Stranco alleged it had against ELG's property. After Turn-Key filed bankruptcy, Stranco's claims against ELG were severed into a separate cause. Stranco then moved for a partial summary judgment on its claim to foreclose on its alleged mineral lien.

On November 16, 2018, the trial court granted Stranco's motion.[4] On January 17, 2019, the trial court signed an agreed order severing Stranco's other pending claim into a separate cause.[5] On February 12, 2019, the trial court signed a final judgment incorporating the partial summary judgment and awarding Stranco attorney's fees.

## STANDARD OF REVIEW

"A trial court's decision to grant summary judgment is subject to de novo review." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018). "Courts review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Id.* (internal quotation omitted). In order to be entitled to a

---

[2] We note this contract was not included in the summary judgment evidence.
[3] We note this contract also was not included in the summary judgment evidence.
[4] Although ELG also filed a motion for summary judgment on Stranco's claim to foreclose on the mineral lien, the trial court did not rule on ELG's motion.
[5] The trial court previously granted a no evidence motion for summary judgment in favor of ELG on a portion of Stranco's trust fund claim, and Stranco non-suited the other portion of that claim.

summary judgment, the movant must establish "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a

## DISCUSSION

Section 56.002 of the Texas Property Code provides, "A mineral contractor or subcontractor has a lien to secure payment for labor or services related to the mineral activities." TEX. PROP. CODE ANN. § 56.002. A "mineral subcontractor" is defined, in pertinent part, as a person who:

> (A) furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or with a subcontractor; or
>
> (B) performs labor used in mineral activities under contract with a mineral contractor.

*Id*. § 56.001(4)(A),(B). A "mineral contractor" is defined as "a person who performs labor or furnishes or hauls material, machinery, or supplies used in mineral activities under an express or implied contract with a mineral property owner or with a trustee, agent, or receiver of a mineral property owner." *Id*. § 56.001(2). "Mineral activities" are defined, in pertinent part, as "digging, drilling, torpedoing, operating, completing, maintaining, or repairing . . . an oil or gas pipeline." *Id*. § 56.001(1); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (noting courts must adhere to statutory definitions).

In its motion for summary judgment, Stranco asserted it was entitled to a judgment allowing it to foreclose on its mineral lien against ELG's property as a matter of law because it "furnished 'material, machinery, or supplies used in mineral activities' and performed 'labor used in mineral activities' under a contract (the Agreement) with a mineral contractor (TURN-KEY) in September 2015 and October 2015 thereby qualifying STRANCO as a 'mineral subcontractor' entitled to claim the lien in Section 56.002 of the Texas Property Code to secure payment for STRANCO's labor and services related to such mineral activities." In its brief, Stranco asserts

that it was only required to prove that its labor and services "related to" or were "used in" mineral activities. Applying the statutory definition of mineral subcontractor, however, we hold Stranco was required to conclusively establish the labor and services it provided were "used in" mineral activities. *See Adams*, 547 S.W.3d at 894. Accordingly, we examine the summary judgment evidence to determine whether Stranco conclusively established the material, machinery, and supplies it furnished and the labor it provided were ***used in*** "digging, drilling, torpedoing, operating, completing, maintaining, or repairing . . . an oil or gas pipeline." *Id*. § 56.001(1).

Stranco primarily relies on the affidavit of its owner stating Stranco contracted with Turn-Key and performed mineral activities on ELG's property "including, but not limited to, hydrostatic pressure testing, torqueing, dewatering, and drying of pressure tested pipe in connection with constructing, repairing, or maintaining oil or gas pipelines and the pipeline terminal station." The affidavit further stated Stranco "furnished materials, machinery, and supplies used in connection with constructing, repairing, and maintaining oil or gas pipelines and the pipeline terminal station."

The summary judgment evidence also included two affidavits from an ELG project manager and an affidavit from an ELG project engineer. One of the project manager's affidavits and the project engineer's affidavit described the work or project as "the engineering, procurement and construction of a new natural gas line bullet tank addition." The project manager's second affidavit stated the Facility was fully functional before the contract was entered into with Turn-Key, and the scope of the work performed under the contract with Turn-Key was "to add bullet storage tanks to the Facility." That affidavit further stated the Facility "is not a gathering facility;" therefore, it "does not have any oil or gas pipelines that 'combine' inside the Facility." The project manager's second affidavit explained the Facility has three import pipelines that "terminate on the outlet valves of the pig receivers before the Facility piping begins" and are "segregated from the Facility piping by valves." The affidavit also explained three export pipelines are also "segregated

from the Facility and begin with meters and then pig launchers," and ELG did not own the export pipelines. The affidavit further explained the work performed by Stranco "was solely limited to the addition of bullet storage tanks within the Facility."

"Affidavits supporting and opposing a motion for summary judgment must set forth facts, not merely conclusions." *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Id*. "Thus, an affidavit that is merely a sworn statement of the allegations in a pleading or that simply paraphrases statutory language is conclusory and lacks probative force." *Lenoir v. Marino*, 469 S.W.3d 669, 686 (Tex. App.— Houston [1st Dist.] 2015), *aff'd*, 526 S.W.3d 403 (Tex. 2017).

The statement in the affidavit of Stranco's owner is conclusory because it does not provide any facts showing how the materials, machinery, and supplies Stranco furnished or the labor it performed on the bullet storage tanks was connected to the oil and gas pipelines such that the work was used in mineral activities. In its brief, Stranco argues its labor and services were used in mineral activities "because [the] natural gas storage tanks are likewise used in operating, completing, or maintaining the natural gas pipelines that the KDB Facility has." Stranco did not, however, produce any summary judgment evidence explaining how the bullet storage tanks were used in the operation, completion, or maintenance of the oil and gas pipelines. And, under our standard of review, we must resolve all doubts in favor of ELG especially in light of the affidavit of ELG's project manager which stated the oil and gas pipelines are segregated from the Facility. *See Schlumberger Tech. Corp.*, 544 S.W.3d at 833. While we agree with Stranco's argument that its work did not have to be performed "on" the oil and gas pipelines themselves to establish its work was "used in" mineral activities, without summary judgment evidence establishing the link between the Facility's bullet storage tanks and the operation, completion, or maintenance of the

oil and gas pipelines, Stranco has failed to conclusively establish that the materials, machinery, and supplies it furnished or the labor it performed were "used in" mineral activities.[6] Although we acknowledge we liberally construe the mineral lien statute to protect laborers and materialmen, a "[l]iberal interpretation of a statute does not permit doing violence to the language of the statute." *Wesco Distrib., Inc. v. Westport Group, Inc.*, 150 S.W.3d 553, 557 (Tex. App.—Austin 2004, no pet.)   And, the Texas Supreme Court has repeatedly instructed that we must adhere to the definitions provided by the statute.  *See Adams*, 547 S.W.3d at 894.  Because Stranco failed to meet its burden to conclusively establish its labor, materials, machinery, and supplies were "used in" mineral activities, the trial court erred in granting the summary judgment.[7]

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Sandee Bryan Marion, Chief Justice

---

[6] We note the three cases Stranco cited in its brief are readily distinguishable from the instant case.  For example, *McCarty v. Halliburton Co.*, was an appeal after a **bench trial** in which the trial court found frac tanks were used in drilling, completing and operating oil wells; therefore, the standard of review was different.  725 S.W.2d 817, 818-20 (Tex. App.—Eastland 1987, writ ref'd n.r.e.) (noting trial court's findings of fact had same force and effect as a jury's verdict and would not be "disturbed on appeal unless they are so against the overwhelming weight of the evidence as to be clearly and manifestly wrong").  The other two cases are federal cases which are not binding precedent.  *See Lee M. Bass, Inc. v. Shell W. E & P, Inc.*, 957 S.W.2d 159, 162 n.4 (Tex. App.—San Antonio 1997, no pet.).  In one of those cases, although the federal court held "as a matter of law " that "plumbing work on the living quarters of an offshore platform **can be** sufficiently related to the mineral activities to qualify for a mineral property lien," the federal district court denied the defendants' motion for summary judgment because "a genuine issue of material fact exist[ed]" as to "whether the Plaintiff's work [was] related to the mineral activities." *Sun Coast Plumbing Co. v. Shell Offshore, Inc.*, No. B-09-204, 2010 WL 1404371, at *4 (S.D. Tex. Apr. 7, 2010) (emphasis added).  In the other case, the evidence established the company claiming the mineral lien was "a caterer to the offshore industry, supplying materials and labor to feed the offshore crews." *World Hospitality, Ltd. v. Shell Offshore, Inc.*, 699 F. Supp. 111, 112 (S.D. Tex. 1988).  Accordingly, the evidence established the link between the company's services and the oil well, and the district court concluded "While a caterer may not have the traditional oil business mystique of a well logger or mudman, it had men on the job site performing an essential function." *Id*. at 113.

[7] Because we reverse the trial court's judgment on this basis, we need not address whether Stranco met its summary judgment burden to conclusively establish it was "under contract with a mineral contractor" as that phrase is used in the statutory definition of "mineral subcontractor." *See* TEX. PROP. CODE ANN. § 56.001(4)(A), (B).